Submitted on briefs July 15, affirmed September 8, 1914.

# HANEY *v.* PARKISON.*

## (143 Pac. 926.)

### Equity—Dismissal—Grounds—Insufficiency of Evidence.

1. Under Section 411, L. O. L., providing that, whenever upon the trial it is determined that the plaintiff is not entitled to the relief claimed, or any part thereof, a decree shall be given dismissing the suit, a motion to dismiss a suit in equity is proper, where the plaintiffs have the burden of proof and fail to make a *prima facie* case.

### Exchange of Property—Rescission—Action—Evidence.

2. In a suit to rescind an exchange of real property for a rooming-house business, evidence *held* not to show that the defendants made any representation as to the value of the furniture and location of the rooming-house.

[As to the difference between a sale of property and an exchange, see note in 94 Am. St. Rep. 227.]

### Exchange of Property—Fraud—Elements—Statement of Facts or Opinion.

3. On an exchange of real property for a rooming-house business, where plaintiff was familiar with the rooming-house which she received in the exchange, and had some experience in running a rooming-house, and knew the rent received for the rooms occupied at the time, and defendants made no false representation as to what they had made by conducting the rooming-house, statements by defendants as to what plaintiff could make if she took the rooming-house were expressions of opinion, and not statements of fact, constituting fraud, or forming the basis for rescission of the exchange.

[As to what is sufficient proof of fraud, see note in 65 Am. Dec. 157.]

### Exchange of Property—Rescission—Grounds—Promise of Defendants.

4. On an exchange of real property by plaintiff for a rooming-house, the promise of the defendants to stand by or behind the plaintiff in the rooming-house business cannot be made the basis for rescission of the exchange.

[As to fraud in the sale of real estate, see note in 2 Am. Dec. 77.]

From Multnomah: FRANK M. CALKINS, Judge.

Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by Emma Haney and Charles E. Haney, her husband, against H. J. Parkison and

*On the question of statement of opinion as fraud, see note in 35 L. R. A. 417.                                                   REPORTER.

Olive M. Parkison, his wife; Home Builders Company, of Portland, a corporation; C. H. Chapman and Alice H. Chapman, his wife; Jonas Iverson and Lillie Iverson, his wife, for a rescission of the contract and deed by which the plaintiffs exchanged a lot with a small house upon it for a small rooming-house, etc. The court below rendered findings and a decree for the defendants. The plaintiffs appeal.

Submitted on briefs without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Westbrook & Westbrook* and *Mr. Abraham Nelson.*

For respondents there was a brief over the name of *Messrs. Yanckwich & Parkison.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiffs, who are husband and wife, brought this suit against H. J. Parkison and Olive M. Parkison, husband and wife, for rescission of the contract by which the plaintiffs conveyed to Parkison and wife lot 5 in block 3 in Arleta Park No. 3, in Multnomah County, for a small rooming-house in the City of Portland and $125, evidenced by a promissory note, and all papers executed in effecting said exchange. The other defendants are made parties because they have or claim to have some interest in said real premises. The gravamen of the suit is fraud.

On and prior to March 27, 1911, the plaintiffs owned in fee the above-described lot, and there was upon it a

small house.   At the same time the defendants Parkison owned a small rooming-house in the City of Portland.   They did not own the building.   They owned the furnishings of the house, and they had been conducting it as a rooming-house for some time.   They boarded some of their roomers.   The house contained only seven rooms, besides bathroom and pantry.   The parlor was utilized as a bedroom, when needed for that purpose.

On the date above stated, the plaintiffs and the defendants made an exchange of said properties; the plaintiffs conveying said lot to the Parkisons, and the latter conveying to the plaintiffs said rooming-house, including the goodwill thereof.   In addition to conveying said lot to the Parkisons, the plaintiffs executed to them a promissory note for $125; the parties agreeing that the rooming-house was worth $125 more than said lot.   Proper papers were executed to effect said exchange.

The plaintiffs seek to have said exchange of properties rescinded for fraud.   The complaint, *inter alia,* alleges the following:

"That the plaintiff Emma Haney, on the 27th day of March, 1911, well knew the defendant H. J. Parkison and Olive M. Parkison, his wife, and had known said defendants for a period of about 12 years prior thereto, during which said time said plaintiff had and did often consult the defendant H. J. Parkison as her attorney about this and other matters, and has and did often talk to and with defendant Olive M. Parkison as a friend and confidential adviser respecting this and other matters.   That on said date and prior thereto she had reposed explicit confidence in said defendants and each of them.   That on said date and prior thereto she did repose said confidence in the representations and statements made to the plaintiffs by said defendants as hereinafter alleged.   That on the 27th day of

March, 1911, and for a long time prior thereto, and continuing for a long time subsequent thereto, the defendants H. J. Parkison and Olive M. Parkison, with intent to willfully and unlawfully cheat, defraud, and deceive the plaintiffs, represented and made unto the plaintiffs false, fraudulent, willful, and malicious statements and representations unto the plaintiffs, upon all of which plaintiffs relied, and which said statements and representations were as follows, to wit:

"(a) That said defendants, knowing full well that the plaintiffs were ignorant of the value thereof, represented to the plaintiffs that said furniture and the said location of said rooming-house were of the reasonable value of $900. That said representations were false, in that said location was of no worth or value whatsoever. That said furniture therein was worth no more than $25 over and above said note and mortgage thereupon for the sum of $375.

"(b) That said defendants represented to said plaintiffs that in the conduct of said rooming-house plaintiffs could and would make their rental of $45 per month, and an additional sum of $25 for groceries and table supplies, and that plaintiff Emma Haney could and would make still an additional sum of money sufficient to buy articles of nice clothing, willow plumes, and other nice and expensive articles of wearing apparel such as defendant, Olive M. Parkison, was then provided with and wearing. That said representations were false, in that said plaintiff did not and could not make any money whatsoever for any articles of wearing apparel, and in that plaintiff did not and could not make any money for groceries and table supplies whatsoever, and in that plaintiffs did not and could not make the said sum of $45 per month rental for said premises, nor any other or further sum, except $22.50, thereupon, and no more."

The defendants answered, denying most of the allegations of the complaint, including all averments as to fraud, and set up affirmative matter, most of which was

denied by the reply. The court below rendered a de-
cree dismissing the suit on the ground of the insuffi-
ciency of the plaintiffs' evidence to make out a *prima
facie* case. The plaintiffs appeal.

It will be noticed that the substance of the allega-
tions of fraud is as follows: That the plaintiffs and the
defendants had been well acquainted with each other
for about 12 years, and during said time Emma Haney
often consulted H. J. Parkison as her attorney about
this and other matters, and that she often talked with
the defendant Olive M. Parkison as a friend and confi-
dential adviser respecting this and other matters, and
that she had reposed implicit confidence in the defend-
ants, and reposed confidence in the representations
made to the plaintiffs by the defendants and stated
*infra.* That the defendants, with intent to willfully
and unlawfully cheat, defraud and deceive the plain-
tiffs, made to the plaintiffs false, fraudulent, willful
and malicious statements and representations, upon
which the plaintiffs relied, and that these representa-
tions were: That the defendants, knowing that the
plaintiffs were ignorant of the value thereof, repre-
sented to the plaintiffs that said furniture and the loca-
tion of said rooming-house were of the reasonable
value of $900, when in fact said property was not worth
more than $400, and was mortgaged for $375. That
the defendants represented to the plaintiffs that in
the conduct of said rooming-house plaintiffs could and
would make their rental of $45 per month and $25 addi-
tional for groceries and table supplies, and that Emma
Haney could and would make an additional sum suffi-
cient to buy nice clothing, willow plumes, and other
nice and expensive articles of wearing apparel, such as
Olive M. Parkison wore. They allege that said repre-
sentations were false, and that plaintiff did not and

could not make any money for wearing apparel, that she could not and did not make any money for groceries or table supplies, and did not make $45 per month to pay for rent, or more than $22.50 per month.

The foregoing is the substance of the allegations of fraud. The complaint alleges, also, that the defendants promised to "stand by" the plaintiffs in case they should need assistance in conducting the rooming-house, and the evidence shows that Parkison did pay one month's rent and for some groceries; but we believe that the plaintiffs repaid him therefor. It appears from the evidence that the plaintiffs conducted the rooming-house about three months, and that they did not make enough therefrom to pay the rent of the house, which was $45 per month. They gave up the rooming-house, and the furniture was with the consent of the plaintiffs stored with the Portland Van & Storage Company. The evidence is not clear on this point, but the furniture appears to have been stored in the name of H. J. Parkison to secure the payment to him of the $125 that the plaintiffs owed him on the note given at the time of the exchange, as stated *supra*. The evidence shows that all of this note, except $9, was paid by the plaintiffs, and that they paid two months' storage on the furniture, and that the furniture was still stored with said company at the time of the trial. It had been there then nearly two years.

1. The plaintiff Emma Haney was the only witness that gave any material evidence on the trial. Her daughter was a witness, but her testimony had no material bearing on the points at issue. Chas. E. Haney, one of the plaintiffs, although as much interested in the case as his wife, was not sworn, and the record fails to show why he was not called as a witness. When the plaintiffs' evidence was in, the defendants

moved for a dismissal of the complaint, for the reason that there was a failure of proof of the facts pleaded. The record refers to this as a motion for a "nonsuit," the motion actually made being for a dismissal. A motion to dismiss a suit in equity is proper, where the plaintiffs have the burden of proof and fail to make out a *prima facie* case: Section 411, L. O. L.; *Hoover v. King,* 43 Or. 286 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790). In this case, the court below had a right to dismiss the suit, if the plaintiff failed to make out a *prima facie* case.

2. The first allegation of fraud is that the defendants represented that the furniture and the location of the rooming-house were of the reasonable value of $900. We have examined the evidence carefully, but fail to find any evidence sustaining said allegation. On page 5 of the evidence, Emma Haney was asked what value was placed on the lot, and what value was placed on the rooming-house, and she answered: "I placed $900 on the lot, and my household and house I valued at $900." She then testified that the consideration stated in the deed made by her and her husband was $900, and that Parkison said that the goodwill of the rooming-house was worth $125. We fail to find from the evidence that either of the defendants made any representation as to the value of the furniture. Nor is there evidence to show what the furniture was worth. There is a failure of proof as to said allegation.

3. The plaintiff Emma Haney, for the purpose of making out the charge of fraud, testified that when they were negotiating for the exchange of properties, H. J. Parkison said to her:

"Why, he said I had the ability, and he could put me in better condition. * * Well, he said I could make my rent, and I could set my table; that I could better

my condition in every way. * * Well, he said I would be able to buy better clothing, and I could make it out of the house, and also make a good living. * * Yes; he said I could make the rent, $45 a month, and I could set my table, and I could make $25 besides that a month."

She testifies that she was unable to make $45 a month, the amount that she was to pay for the rent of the house. Mrs. Haney says that she lived 2½ years at Pasco, Washington, and that she conducted at that place a large rooming-house. Hence she was acquainted with the rooming-house business, and she did not engage in this business without having had experience in that kind of business. She says that she told Parkison that she was going into a business that she did not fully understand. She did not claim that she was without experience in the rooming-house business. She was not a beginner. She admits that she was familiar with the rooming-house before the exchange was made. She had been in the house frequently, and had been through the rooms, and was acquainted with the furniture and furnishings. She had been in all of the rooms, and had examined them. She knew that there were only seven rooms in the house, besides the bathroom and pantry. She knew how many rooms were rented and how many were vacant. She knew what each room rented for. In fact, she knew all about the business that anyone could tell her.

The business was small and not complicated. She could easily see that only a small business could be done in a seven-room house, taking into consideration that she, her husband, and grown daughter intended to live in the house. Her evidence shows that her mother and sister were there a part of the less than three months that she conducted the house. There is no evi-

dence to show that the defendants misled her as to the amount, kind or the value of the furnishings, or as to the number of rooms occupied or vacant, or as to the amounts for which the rooms rented. She knew all about the house and its location, and was generally well informed about the premises. She admits that she had had experience in that kind of business. She does not claim that either of the defendants made any false representations as to what they had made by conducting the rooming-house.

It is evident that she could not make what she says Parkison told her she could by renting only two or three rooms at the prices for which Parkison had rented them; but possibly, by boarding the roomers, she might have done much better than she seems to have done. The plaintiff, Emma Haney, as shown *supra,* testifies that Parkison said that she would be able to buy better clothes; that she could better her condition in every way; that she could make it out of the house; that she could make the rent of $45 per month; that she could make $25 besides the rent, etc. Under the evidence, we think that these statements were expressions of opinion and prediction and not statements of fact, and that the plaintiffs, at the time that they were made, so understood them, and that they do not constitute fraud.

Mr. Wm. Lawrence Clark, Jr., in 14 Am. & Eng. Ency. Law (2 ed.), page 34, says:

"Upon the authorities it may be laid down as a general rule that an expression of an opinion or belief, if it is nothing more than this, and if so intended and understood, is not a representation of fact, and, though false, does not amount to fraud. A person ordinarily has no right to rely upon such a statement, and, if he does so, he cannot take it as fraud, either for the pur-

pose of maintaining an action of deceit, or for the purpose of rescinding a contract at law or in equity.''

In the same volume, on pages 39, 40, the same author says:

''The general rule that a mere expression of opinion does not amount to fraud applies with peculiar force to predictions, or declarations as to future events, and expressions of hope or expectation. Such declarations are generally mere expressions of opinion or belief, and, if so intended and understood, they should not be relied upon, and will not constitute fraud. Statements as to the prospective value of property are generally to be regarded as mere expressions of opinion or belief, which should not be relied upon, and which do not constitute fraud. Thus it has been held that a highly colored and false statement as to the effect the location of a college at a particular point will have in increasing the value of property in the vicinity is not such a representation as will avoid a subscription for the purpose of establishing the college. Similar to these statements are statements as to the future profits of a business or contemplated enterprise, or as to the advantages or benefits to be realized in the future from a particular investment. These do not generally amount to fraud.''

Kerr, Fraud and Mistake, pages 82, 83, says:

''A misrepresentation, to be material, should be in respect of an ascertainable fact, as distinguished from mere matter of opinion. A representation which merely amounts to a statement of opinion, judgment, probability or expectation, or is vague and indefinite in its nature and terms, or is merely a loose, conjectural, or exaggerated statement, goes for nothing, though it may not be true, for a man is not justified in placing reliance on it. * * Mere exaggeration is a totally different thing from misrepresentation of a precise or definite fact. Such statements, for instance, as assertions as to the value of property, or representations by the agent of the vendor that the title is good,

or mere general terms of commendation, or mere general or exaggerated statements as to the profits and prospects of a company, or as to the value of securities, * * are only expressions of opinion or judgment as to which honest men may differ materially."

In *Brady* v. *Cole,* 164 Ill. 120 (45 N. E. 440), the court says:

"It is not sufficient that Cole made statements that she was making a good trade and bettering her condition, and that she could sell enough lots off the tract of the land purchased by her to pay for her house. Those statements were mere matters of opinion, and the mere expression of an opinion held by a party cannot, standing alone, be held a misrepresentation. The statement must be the affirmation of a fact. * * The reason of this rule is that, while the person to whom the representations are made has a right to rely upon them, he is assumed to be equally able, from his own opinion, to come to as correct a conclusion as the other party, and therefore cannot be misled by such opinion. Promises for the future and hope of realizing speculative profits are not present fraud. It must be of a fact at the time or previously existing."

In *Head* v. *Dant,* 14 Ky. Law Rep. 743 (21 S. W. 528), the court says:

"Except as to its ownership, the only thing said by the appellant to appellee about the brand during the entire trade is testified to by appellee as follows: 'He said I ought to have the brand, and that brand was worth more than the distillery property; and he also said he would assure that we would sell a thousand barrels of whisky a year by the use of the brand. * * ' There was no representation of superiority or of high credit, etc., as to the brand, but only an exaggerated opinion of value. The distillery property was sold for $4,000 at the same time, and the brand rated at only $800, so the appellant could not seriously have expressed this opinion of value, nor could appellee have been misled or deceived by it. The assurance that

they would sell the quantity mentioned to the St. Louis parties was mere speculation, and not deceptive."

In *Musick* v. *Gatzmeyer,* 47 Ill. App. 329, the syllabus in part is:

"The commissions on sales made by real estate brokers is the basis of the value of their business, and the commission is on the value of the land and not on the number of tracts on his list, and the expression of an opinion by such broker, to a person contemplating the purchase of an interest in his business, as to the amount of profits to be made in such business, cannot be accepted as a representation of a fact, but must be looked upon as simply an opinion, and not the basis of a right to rescind such contract duly entered into."

In the case of *Pedrick* v. *Porter,* 87 Mass. (5 Allen) 326, the court, *inter alia,* says:

"In charging the jury, if the judge had stated that the representations made by defendant relative to further profits that might be made were a good cause of action, it would have been erroneous."

When the defendant Parkison told the plaintiff that she could make certain sums by conducting the rooming-house, he merely expressed his opinion or belief in relation thereto. What he said did not constitute representations of facts, and they cannot be made the basis for the rescission of the exchange of properties. The plaintiffs must have understood that the statements made by Parkison as to what they would be able to make were merely his belief in relation thereto, because he could not know as a fact what they could do. Their success or failure, he must have known, would depend largely on their efforts and ability in conducting the business. He could not know that they would attend to the business properly. Very likely he

thought that they would be diligent and faithful, and what he said was based on this belief. Opinions as to the future profits of a business cannot ordinarily be the basis for an action for deceit or a suit for rescission of contracts.

4. The promise, made at the time of the exchange of the property, that Parkison would ''stand by'' or ''behind'' the plaintiffs in the rooming-house business cannot be the basis of a suit for rescission of the exchange deed and contracts. We have examined the evidence and we find that the plaintiffs failed to make out their allegations of fraud. Their evidence is very meager and unsatisfactory. They appear to have made an unprofitable exchange of property, but the charge of fraud is not made out.

This court in *Keel* v. *Levy,* 19 Or. 452 (24 Pac. 253), referring to the evidence necessary to establish fraud, says:

''Fraud is a matter of fact, which must be proven; it is never presumed. It is true that direct evidence on the subject is rarely attainable. It may therefore be established by circumstances; but the circumstances relied upon must be of such a satisfactory character as to convince the mind of the trier of the fact that the transaction drawn in question was a sham and not what it purported to be. * * There is a possibility that this assumption (of fraud) may be true, but in questions of this nature the court cannot act on possibilities. Proof that is satisfactory, that which is strong enough to overthrow the solemn writings executed by the parties at the time, is requisite, and that I am.unable to find in this record.''

The evidence in this case is neither strong nor satisfactory. We think that the evidence fails to show that there was any fiduciary or confidential relation existing between the plaintiffs and either of the defendants.

The court below found that the plaintiffs failed to make out a case of fraud, and we approve that finding. The decree of the court below is affirmed.

AFFIRMED.