Argued at Pendleton October 30, reversed December 24, 1918.

## DICKENSON *v.* HENDERSON.

(176 Pac. 797.)

**Pleading—Conclusion of Law.**

1.   The pleading of a conclusion of law, if demurred to, amounts
to a nullity.

**Courts—County Court—Proceedings—Pleading.**

2.   Proceedings in County Court are somewhat informal, no definite
rules of pleading being prescribed by the Code for that court.

**Pleading—Conclusion of Law—Insanity.**

3.   The plea that a person is insane and incapable of conducting
his own affairs is not a conclusion of law, but of fact.

[As to who is deemed to be an insane person, see note in 29
Am. Dec. 38.]

Insane Persons—Proceedings for Guardianship—Pleading—Jurisdiction.

4. To give the County Court ·jurisdiction of a petition for the appointment of a guardian for an alleged insane person, nothing more is necessary than to plead substantially the words of the statute; that is, that the person is insane or incapable of conducting his own affairs.

Insane Persons—Guardianship—Right of Children.

5. Neither son nor daughter of an aged and somewhat feeble and childish woman has any such interest in her property as to entitle them as of right to seek appointment of guardian over her estate in order to preserve it for them.

Insane Persons—Guardianship—Incapacity—Evidence.

6. On a daughter's petition for appointment of a guardian of the estate and person of her mother, evidence *held* insufficient to prove the mother was incapable of conducting her own affairs.

From Harney: DALTON BIGGS, Judge.

In Banc.

This is a proceeding to subject the estate and person of Laura A. Dickenson to a guardianship. On the eleventh day of June, 1917, Rose C. Henderson, a daughter of Laura A. Dickenson, filed a petition in the County Court of Harney County seeking to have herself appointed as guardian for the person and estate of her mother. The petition shows that Laura A. Dickenson was about 81 years of age, and possessed real estate of the value of about $6,000 located in Harney and Linn Counties, Oregon; that for about five years before the filing of the petition, Laura A. Dickenson had resided with said daughter in Harney County, and before that for about three years with her son near Waterloo in Linn County, and for some time before that with her son in Harney County; that said Laura A. Dickenson was about to leave Harney County with her son to live on her place in Linn County, and that she was insane and incapable of taking care of her own property. The petition further charges that the son would have undue influence over Laura A. Dickenson and would attempt to get posses-

sion of her property and cause the estate to be dissipated.

Laura A. Dickenson appeared at the hearing and filed a motion to dismiss the petition on the ground that it did not state facts sufficient to give the court jurisdiction over her person or estate. This motion was overruled and a trial had before the county judge, who appointed Rose C. Henderson as guardian of the person and estate of said Laura A. Dickenson. An appeal was taken by Laura A. Dickenson to the Circuit Court of Harney County, and the evidence submitted before the County Court was transcribed and was the only evidence submitted to the Circuit Court, which affirmed the County Court. Laura A. Dickenson appeals.        REVERSED.

For appellant there was a brief over the names of *Mr. James K. Weatherford* and *Mr. C. A. Sweek,* with an oral argument by *Mr. Weatherford.*

For respondent there was a brief submitted by *Mr. J. S. Cook.*

OLSON, J.—The only two points to be disposed of on appeal are, first, should the County Court have overruled the motion to dismiss the proceedings on the ground that the petition did not state facts sufficient to give the court jurisdiction. Second, does the evidence sustain the decrees in both the County and Circuit Court holding Laura A. Dickenson so incapable of conducting her own affairs as to make the appointment of a guardian over her person and estate necessary.

1-4. As to the first question, it is contended the petition alleges that Laura A. Dickenson was insane and incapable of conducting her own affairs; that this al-

legation is a mere conclusion of law and not a statement of fact, and that under the rule, well settled in this state, the pleading of a conclusion of law when attacked by demurrer amounts to a nullity. It will be remembered, however, that the proceedings in the County Court are of their nature somewhat informal, and no definite rules of pleading are prescribed by the Code for said court. The plea, however, that a person is insane and incapable of conducting their own affairs is not a conclusion of law. It is a plea of fact of the same nature as if it were set up that a man were sick. The fact that a person is sick is usually reached from a deduction of numerous other facts, but the conclusion is nevertheless a fact. It would seem that in order to give the court jurisdiction nothing further would be necessary than to plead substantially the words of the statute, that is, that a person is insane or incapable of conducting their own affairs.

5, 6. As to the second point, the evidence in the case is very brief and a large portion of it incompetent. Upon the trial at the lower court the attorney for petitioner waived the claim that Laura A. Dickenson was insane, as alleged in the petition, and relied solely upon the ground that she was incapable of conducting her own affairs. The evidence shows that Mrs. Dickenson was possessed of 100 acres of land in Linn County, about one-half mile from Waterloo, about 50 acres of which was in cultivation with buildings located thereon; that there were neighbors on every side of her and a store immediately across the road; that she lived on this place for three years, returning to Harney County about 1911 for the purpose of taking up a homestead; that she did then take up a homestead and commuted on the same, and that her son lived with her at Waterloo and also lived with her a part of

the time in Harney County after her return there.
There was evidence in the case showing that 40 acres
of land had been purchased, payment being made in
part by the son and in part by the mother. The peti-
tioner contended in her evidence that this 40 acres had
been deeded to the son without consideration, her
proof being merely her own opinion of the matter, and
hardly arising to the dignity of hearsay evidence.
The son testified on the stand that he had furnished
one half the consideration of the purchase for this 40
acres; that the title to the same still remained in the
mother, and that he had not yet asked her to redeed it
to him. The mother testified that as to this 40 acres
half of it belonged to him and half to her and that she
intended giving him all of it. Of the land in Harney
County, 140 acres was inclosed by the petitioner and
her husband and used by them for about nine years
without paying any cash rent therefor. Mrs. Dicken-
son lived with petitioner for the last five years, and
shortly before the filing of this petition the son came
to Harney County and he and his mother planned to
return to Mrs. Dickenson's home in Linn County.
This the petitioner objected to and started the pro-
ceedings now before us. The evidence shows that
petitioner one week before filing the papers in this
case sought to purchase from her mother the 140 acres
of land inclosed by herself and her husband, for $1,500,
and that the mother refused to sell the land for that
amount. The evidence also shows that Laura A. Dick-
enson was weak physically but not enough to prevent
her from getting around with a cane and attending
court and giving testimony and keeping the fire going
at the Henderson home; that she had not had medical
attention for over six years and then only a little
medicine. She answered 52 questions on direct ex-

amination about as well as could be expected of a person 81 years of age, and the attorneys for petitioner did not avail themselves of the privilege of cross-examination. Three doctors were called upon the trial and all testified that Laura A. Dickenson was capable of handling her own affairs judging from their personal observation of her conduct at the trial and an oral examination made by them in the presence of the court. Their testimony, however, would not stand on any different basis than ordinary witnesses for the reason that the insanity charge had been withdrawn. The petitioner failed to prove that her mother had any other property except the real estate; that any of such real estate in Harney County had any income; or that the income from the farm in Linn County over and above the necessary charges had been dissipated. She failed to prove that Laura A. Dickenson had given away any of her real property or encumbered it or otherwise dissipated her estate. The evidence would seem to show that while Laura A. Dickenson was somewhat feeble physically and somewhat childish in some things, she had not reached such a weakened condition of body or mind as not to be able to realize what she was doing with her property, or to destroy her power of selecting persons to perform services for her in caring for her property or herself that she would not be able to perform alone. The evidence submitted goes no further than to establish that in view of the fact that the appellant was 81 years of age and somewhat feeble physically and somewhat absent-minded and forgetful, she probably *might* be influenced, and being so influenced, she *might* dissipate her estate; in fact the petition seems to show that the chief worry of the petitioner is that her brother Guy *might* obtain influ-

ence over his mother and *might* get the ownership and control of the property, thereby possibly reducing the amount petitioner *might* secure after the death of Laura A. Dickenson. This statement shows what a string of possibilities are used to establish the claim that the court should intervene and appoint a guardian for the person and estate of Laura A. Dickenson. Neither the son nor the petitioner have any such interest in the property of their mother as to entitle them as of right to seek the appointment of a guardian over such estate. The property of Laura A. Dickenson should be preserved as far as the same is necessary to provide for her care and support the balance of her life, and if she should choose to take all of her property and convey it to an Old Folks Home or any other institution or person, who would guarantee her proper care and support for the balance of her life, neither the petitioner or the brother would have the right to complain nor would the courts intervene to prevent such an arrangement fairly and honestly entered into.

The evidence in this case has been carefully examined and the conclusion arrived at is, that Laura A. Dickenson has not been proven incapable of conducting her own affairs. The decree of the lower court is reversed and the orders and proceedings of the County Court in the matter of the guardianship of Laura A. Dickenson will be set aside.    REVERSED.

HARRIS, J., absent.