Argued June 21, affirmed July 29, 1922.

## YOUNG *v.* EVANS.

(208 Pac. 741.)

**Mortgages—Absolute Deed may be Shown by Parol to be a Mortgage.**

1. It may be shown by parol that a deed absolute in form is in fact a mortgage designed to secure a then existing debt.

**Mortgages—Cannot Exist Unless There is a Debt to Secure.**

2. It is essential to a mortgage that a debt secured by it be in existence, so that an absolute deed cannot be shown to be a mortgage by an agreement on the part of the grantee to reconvey unless there was a debt owing by the grantor to the grantee.

**Pleading—Instrument Appearing in Pleading Controls Allegations as to Effect.**

3. An instrument set out in full in the pleading controls the allegations of the pleadings as to its legal effect.

---

1. On the question of parol evidence to show that deed absolute on its face was intended as a mortgage, see comprehensive note in L. R. A. 1916B, 18.

**Mortgages—Bond for Title by Mortgagee as Grantee Held to Give Only Option to Buy.**

4. Where a debt secured by a mortgage was satisfied before the recording of the conveyance from the mortgagor to the mortgagee, a bond given by the mortgagee as grantee to reconvey the premises to the mortgagor on receipt of a stated sum within a stipulated time, and the subsequent renewals of the bond did not make the deed a mortgage, since there was no obligation on the part of the mortgagor to make the payment, but the instruments only gave him an option to repurchase if he so desired.

**Mortgages—Delay of Twenty-five Years Held to Bar Relief.**

5. Where no excuse was shown for a delay of 25 years in seeking relief under a bond to convey title, which, with the conveyance to the obligor of the bond by the obligee, was claimed to constitute a mortgage, and in the meantime the property had been conveyed to the purchaser's daughter, who had knowledge of the bond, but claimed she made the purchase with her father's consent, and the father had died, so that his testimony was not available, the right to relief had been lost by the delay.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Potter, Foster & Immel* and *Messrs. Young & Ray*, with oral arguments by *Mr. Donald Young* and *Mr. E. O. Potter*.

For respondent there was a brief and oral argument by *Mr. Charles A. Hardy*.

BURNETT, C. J.—This is a suit instituted in the first place by the guardian of the person and estate of James J. Evans. Owing to the death of the ward the suit is now prosecuted by the same person as administrator of his estate.

According to the complaint, on February 15, 1893, Evans was the owner of a half-section of land in Lane County, and on that date executed and delivered to one S. L. Shedd a warranty deed to the prop-

erty, which deed is set out in full in the complaint and is said to have been recorded on February 23, 1893. It appears in proof without controversy that at the time of the conveyance there was a mortgage on the premises for $1,500 with the sum of $150 as accrued interest, given by Evans to Shedd to secure the payment of a debt due from the former to the latter, and that on the following day Shedd executed and delivered to Evans an instrument in writing, acknowledging that Shedd had received full and complete payment of the mortgage, which satisfaction piece was recorded February 20, 1893, prior to the recording of the deed from Evans to Shedd. The complaint alleges "that at the time of the execution and delivery of said deed, for the purpose of showing the nature of the transaction and of protecting the said James J. Evans in his rights in said property, the said S. L. Shedd made, executed and delivered to the plaintiff a bond for deed to the said property," which instrument is set out in full in the complaint. It is dated December 29, 1893, more than ten months after the execution of the deed. The condition of the bond reads thus:

"That if the above-bounden obligor [Shedd] shall on the first day of January, A. D. 1898, make, execute and deliver unto the said James J. Evans (provided that the said James J. Evans shall on or before that day have paid to the said obligor the sum of sixteen hundred and fifty dollars in U. S. gold coin the price by said James J. Evans agreed to be paid therefor) a good and sufficient conveyance in fee simple, with the usual covenants, of all that certain piece or parcel of land," describing the tract by legal subdivisions, "then this obligation to be void; otherwise to remain in full force and virtue."

It is then said that the bond for a deed was never recorded and "that the execution of said warranty deed and of said bond for deed was all part of the same transaction and that the same was entered into for the purpose of securing the said S. L. Shedd in the payment of the said sum of $1,650 due him from said James J. Evans, being $1,500 as principal and $150 interest, and for no other purpose; and that the said warranty deed, together with said bond for a deed, constituted and were in fact a mortgage." This bond expired January 1, 1895. On January 9, 1895, Shedd, according to the complaint, delivered to Evans another bond couched in the same terms, expiring on January 1, 1896. A third bond, also set out in full in the complaint, was given by Shedd to Evans under date of February 10, 1897, expiring January 1, 1898. This bond was not recorded until March 4, 1918, more than twenty-one years after its execution. All of these bonds are set out *in haec verba* in the complaint, but it is not said of the last bond that taken in connection with the deed from Evans to Shedd, the transaction amounted to a mortgage. The complaint also states that on January 16, 1900, S. L. Shedd and his wife conveyed the realty in question to the defendant by a warranty deed in the usual form, acknowledged and recorded, which is also set out in that pleading.

It is averred that the defendant is the daughter of James J. Evans and that at the time Shedd conveyed to her she knew of the bond for a deed and of Evans' rights thereunder in and to said property; that at the time of the execution of the deed to her by Shedd she paid to him the amount of the indebtedness of her father to him; and that she went into possession of the premises and ever since has re-

mained there, deriving the rents, issues and profits therefrom. Some averments are made respecting the rents, issues and profits of the place which she received and has not accounted for. The prayer is to the effect that the transaction thus evidenced by the writings set out in the complaint be declared a mortgage; that the defendant be required to account for all she has received from said property, to be credited on the indebtedness due from Evans; and that the mortgage be foreclosed and the land sold for the satisfaction of any balance remaining. There is no allegation seeking to impeach or alter the legal effect of the written instruments quoted *in haec verba* in the complaint, for either fraud, mistake or anything else.

The answer denies that the instruments were intended as a mortgage and contends that the defendant bought the property with the knowledge and consent of her father and on his statement that although he had once had a right to buy it under the terms of the bond for deed, he had lost that right and at the time of the conveyance from Shedd had no interest whatever in the property. The defendant claims to have paid full value for the land, with the intent and purpose not only on her part, but on that of her father and Shedd, her immediate grantor, that she should become the owner in fee simple absolute of the property. She also pleads in effect that the lapse of time from the date of her deed, January 16, 1900, to the time of filing the present complaint on July 1, 1918, during which time she held title by adverse possession, constituted her the owner in fee simple of the property, and that in not commencing this proceeding sooner, the plaintiff was guilty of laches, precluding a recovery.

The Circuit Court entered a decree declaring the defendant to be the owner in fee simple of the property, and that her father, whom the plaintiff as administrator of his estate represents, had no interest or title to the property after the deed from Shedd to the defendant, and awarding costs to the defendant. The plaintiff appeals.

1. In his brief the plaintiff relies upon the well-established principle that it may be shown by parol that a deed absolute in form is in truth a mortgage designed to secure a then existing debt. This is so well settled in this state that citation of authorities is unnecessary.

2. At the opening of the plaintiff's case, however, he himself introduced the satisfaction piece already mentioned, whereby Shedd acknowledged that he had received full and complete payment of the mortgage theretofore encumbering the land. There is no evidence whatever in the case that then or subsequently Evans agreed to pay or did pay anything to Shedd. It is an essential to a mortgage that a debt secured by it must be in existence. In other words, if there be no debt, there can be no mortgage. Hence, for want of an existing obligation of Evans to pay something to Shedd, which the latter could enforce, the transaction evidenced by the writings appearing in the complaint did not constitute a mortgage or any other security for a debt.

3. Another view of the case which seems to be controlling is this: The plaintiff has stated that the whole transaction was evidenced by written instruments, which he quotes at large in his complaint. He does not seek to impeach those instruments by any averment giving to them a different legal effect from that which would be imputed to them by a court

in construing them. It is true that as to the first two bonds the complaint alleges "that the said warranty deed together with said bond for a deed constituted and were in fact a mortgage." As pointed out, neither this averment nor any similar one is applied to the last bond. This allegation of the complaint, however, is but a conclusion of law, and the operation of the pleading is controlled by the instrument which it purports also to set out according to its legal effect. In other words, the instrument itself appearing at large in the pleading prevails over the allegation as to its legal effect: *McDaniel* v. *Chiaramonte,* 61 Or. 403 (122 Pac. 33); *Somers* v. *Hanson,* 78 Or. 429 (153 Pac. 43); *Haworth* v. *Jackson,* 91 Or. 272 (178 Pac. 926); *Cranston* v. *California Ins. Co.,* 94 Or. 369 (185 Pac. 292); *First Nat. Bank* v. *Bach,* 98 Or. 332 (193 Pac. 1041); *O'Neill* v. *Twohy Bros.,* 98 Or. 481 (190 Pac. 306).

Really, the case presented by the pleadings is one in which the court is called upon to construe the instruments upon which the plaintiff relies as his muniments of title, or, more correctly speaking, as the sole basis of his suit. He lays before the court all of the documents evidencing the transfer to Shedd and declaring the conditions under which Evans may recover the title, and asks the court to declare of them a certain legal effect. This is the question addressed to us.

4. As said by Mr. Justice MOORE in *Harmon* v. *Grants Pass Banking & Trust Co.,* 60 Or. 69, 74 (118 Pac. 188):

"If the transfer of a title is made to depend upon the performance of a condition, and at the termination of the limit prescribed for a reconveyance, the grantor is not in a situation to keep his promise,

104 Or.—40

or does not desire to perform his engagement, no legal obligation rests upon him to do so. The conditional sale reserves to him a mere option, permitting him to speculate upon the possibility of an enhanced value of the property, and, if his expectations are disappointed in this particular, allowing him to escape liability, but, if his desires are realized, authorizing him to demand a reconveyance. When, however, the transaction is regarded at its inauguration as a mortgage, the opportunity for hazard respecting any fluctuating in the value of the property is eliminated, and the doctrine of once a mortgage, always a mortgage, controls."

The instruments pleaded as bonds for deed amount only to an option in favor of Evans, the obligee, to purchase the property at a certain price. As stated, there was no evidence that Evans agreed to pay anything to Shedd after the satisfaction of the former mortgage and the acknowledgment of payment thereof on the part of Shedd. There is nothing in the record upon which Shedd could have compelled Evans to pay anything. Neither is there any evidence or pretension that Evans did pay anything towards the purchase price specified in the bond. It is true that these bonds have not been foreclosed. If this suit amounts to anything, it is but an effort to enforce the bonds, recover the property into the estate of Evans and then to administer upon it.

5. Granting that Evans had any interest in the property by virtue of those bonds, if Shedd or his successor in interest, the present defendant, wished to be rid of that interest, the proper remedy would be by foreclosure of the bond. The counterpart of this, or the remedy in favor of Evans or his successor in interest, the plaintiff, would be a suit in the nature of one to redeem. The effect of either rem-

edy would be to destroy the title or claim of the adverse party. In either event it would be incumbent upon the party seeking equity, to do equity. The instruments simply gave to Evans an option to buy, and he has not bought. He had no interest or estate in the property after he conveyed it to Shedd.

Moreover, aside from all these rules of law and of equity respecting the legal effect of the transaction narrated in the complaint, the undisputed evidence shows that the father of the defendant urged her to buy the property because he had no right to it, having lost his privilege of buying the same, and then had no interest in it. Urged thus, the daughter, the defendant here, paid the full value of the property from her own funds, earned by her own efforts. Still further, it appears in evidence that the father is dead, and that Shedd and his wife are both dead, leaving the defendant deprived of the testimony of the most important witnesses to the actual facts of the transaction. So far as disclosed in the record before us this delay of a quarter century, 1893–1918, is inexcusable and closes the door of chancery against such a laggard. The decree of the Circuit Court is affirmed.     AFFIRMED.

BEAN, BROWN and McCOURT, JJ., concur.