Argued October 19, affirmed December 15, 1954

KELLEY ET UX. *v*. MALLORY ET UX.

277 P2d 767

*John F. Conway,* Portland, argued the cause and filed briefs for appellants.

*James P. Powers,* Portland, and *George G. Van Natta,* St. Helens, argued the cause for respondents. With them on the briefs were Joseph & Powers and D. C. Bond, Portland.

Before LATOURETTE, Chief Justice, and WARNER, BRAND and PERRY, Justices.

WARNER, J.

This is a suit for an accounting. From a decree dismissing the plaintiffs' complaint with prejudice, they appeal.

On April 2, 1948, the respondents as the first parties and the appellants as the second parties entered into an agreement (hereinafter referred to as "the agreement"), the pertinent parts of which read as follows:

> "That the said parties of the first part own and operate a Sales and Service of automobiles, trucks, farm and electrical equipment business, in the City of Clatskanie, Oregon, under the assumed name of Mallory Chevrolet Company. That the said parties of the first part do hereby agree to sell and the said parties of the second part agree

to purchase all of the physical assets of the said Mallory Chevrolet Company, as of this date, and which said assets are specifically described in an inventory * * * hereto attached and accepted by all parties as a part of this agreement, on the following terms and conditions:

"That said parties of the second part agree to pay as the total purchase price for said assets and business the price of Twenty Thousand Dollars ($20,000.00), payable as follows:

"The sum of One Thousand Dollars ($1,000.00) on the date of the execution of this agreement, receipt of which is hereby acknowledged by said parties of the first part and the further sum of not less than Four Thousand Dollars on or before the 1st day of January, 1949, and the said parties of the second part further agree that they will, in addition to the aforesaid payments, pay the further sum of Five Thousand Dollars ($5,000.00), as soon as possible and on or before two years from the date of this agreement, and said parties of the second part further agree that the balance of the said purchase price, to-wit:

"Ten Thousand Dollars ($10,000.00) shall be paid by the said parties of the second part to the said parties of the first part on or before the 31st day of December, 1951, there shall be no interest charged on any balance, save and except after the first twelve months, any balance remaining unpaid shall bear interest at two per cent per annum.

"The said parties of the second part shall have the right and privilege of paying any further and additional payments or the total balance due on said contract at any time on and after the date of the execution of this agreement.

"It is further stipulated and agreed between the parties herein that the said Gerald B. Kelley from and after the date of this agreement shall be employed by the said Mallory Chevrolet Company at a salary of Four Hundred Dollars per

month, payable monthly, but that the actual management and control of the Mallory Chevrolet Company shall at all times during the period of this agreement be under the said Fred N. Mallory, who shall receive no compensation for his said management and operation of said concern, provided however, that the profits accruing on or after the execution of this agreement shall be divided quarterly as follows: There shall be first paid to the parties of the first part the sum of Twelve Hundred Dollars from the total net profits, as shown by a quarterly audit, and the remainder of said total net profits shall be divided in equal shares between the said parties of the first part and the said parties of the second part. The said Gerald B. Kelley and the said Fred N. Mallory agree that they will use their best efforts in the management and operation of said business toward the end that maximum profits shall result from the operation of Mallory Chevrolet Company.

"It is mutually covenanted and agreed that any profits or increases in the assets of said Mallory Chevrolet Company over and above that, as shown in the inventory hereto attached, shall at all times during the period of this contract belong in equal shares to the said parties, subject to the terms and conditions as herein agreed upon.

"It is further stipulated and agreed that as soon as said parties of the second part are ready and willing to make their final payment of the total purchase price, and when said parties believe that said parties of the second part can produce a financial statement, which in their opinion will satisfy General Motors Corporation that a transfer by said corporation of the franchise, now owned by said parties of the first part can safely be made by said corporation to the parties of the second part, then said parties of the first part agree to make application to the General Motor [s] Corporation for the transfer of the Chevrolet franchise, the Maytag Company franchise, the Frigidaire franchise, which

they now own, to the said parties of the second part, and said parties of the first part promise and agree that they will make such application and will make every reasonable effort to have transfers of such franchises made to the said parties of the second part on or before twelve months from the date that said parties of the second part elect to pay the remaining Ten Thousand Dollars ($10,000.00) of said purchase price.

"* * * * * *

"That upon the payment of the total purchase price, the parties of the first part agree to convey by good and sufficient Bill of Sale, title to all of the aforesaid personal property, assets and good will, as herein described, of said Mallory Chevrolet Company, now owned by said concern, to the said parties of the second part, free and clear from all liens and encumbrances as of this date.

"It is further mutually covenanted and agreed that in the event that a transfer of said franchises or any one of them cannot be effectuated, then it shall be optional with said parties of the second part, either to complete the purchase of said assets and business, in accordance with the terms of this contract or said parties of the second part may rescind and elect not to complete the purchase of said assets by reason of not receiving said transfers of said franchises, then and in that event the said parties of the first part promise and agree that they will refund to the said parties of the second part all payments by said parties of the second part to the parties of the first part under the terms and provisions of this agreement, save and except that said parties of the first part shall not be required to pay any interest on such amounts as may have been paid under this contract by said parties of the second part; should said parties of the second part elect and demand such refunds. It is further covenanted and agreed that said refund shall be made after a complete audit has been made of all of the books and records of said Mallory

Chevrolet Company to determine the actual status of said concern and any increase or accumulation that may have accrued as of the date that said refund is demanded. The said parties of the second part shall at all times during the period of this contract have full access to and may examine and have audits made of the books and records of the said Mallory Chevrolet Company."

Notwithstanding that the respective wives of the plaintiff Kelley and the defendant Mallory were parties to the agreement, they rendered no services to the Mallory Chevrolet Company which are in any way involved in this litigation, nor, so far as the record here is concerned, did they participate in any phase of the management or matters giving rise to this suit. We will, therefore, hereafter refer to Kelley and Mallory as if they were the only persons executing the contract and the only persons concerned with subsequent transactions referred to hereinafter.

There were two suits between the parties, predicated upon the above contract, wherein Kelley as plaintiff sought an accounting with Mallory as defendant. The first suit was instituted on November 6, 1950, and resulted in a decree of dismissal. Later, we will refer to the first suit more fully. The instant or second suit was filed February 5, 1952.

In the second suit Kelley argues that the agreement creates the relationship of employer and employee and that he, as an employee of Mallory, is entitled to receive wages at the rate of $400 per month, plus one half of the profits of the company during the period of his employment.

·On the other hand, Mallory asserts that the agreement was terminated on February 29, 1949, by reason of Kelley's failure to pay when due the sum of $4,000

on the purchase price on or before January 1, 1949; that he thereafter offered to hire Kelley at a straight salary of $400 per month; that Kelley accepted the offer and was fully paid at that rate for the entire period of his employment ensuing after February 29, 1949.

Mallory also pleads as an estoppel the decree of dismissal in the first suit as being res judicata as to all matters pleaded by the plaintiff in the second suit.

It is this defense of res judicata which first challenges our interest. When we examine the complaints in the two suits, we are immediately struck by their similarity. Both are between the same parties and both plead the entire agreement of April 2, 1948, as the basis for plaintiff's claim for relief. In both suits the relief sought is for an accounting between Kelley and Mallory predicated upon the theory that the agreement created a fiduciary relationship between them. In the first suit, however, plaintiff pleads as a conclusion of law that the agreement creates a partnership in the business known as Mallory Chevrolet Company; but a conclusion of law is not issuable, requires no denial and does not aid the pleading. *Almada v. Vandecar*, 94 Or 515, 519, 185 P 907. It amounts to a nullity, and a pleader's construction of the legal character of the contract is not binding on the court. *Young v. Evans*, 104 Or 619, 624, 208 P 741; *Dickenson v. Henderson*, 90 Or 408, 411, 176 P 797. When the instrument relied upon is set out in full in the pleading, as in both the Kelley suits, it prevails over the allegations as to its legal effect. *Young v. Evans*, supra, at page 625.

However, a close reading of the complaint in the first suit gives rise to a doubt whether the plaintiff

did in fact believe a "partnership" to be the true legal relationship created between the defendant and himself under the agreement of April 1948. In the complaint in that suit we find plaintiff blowing both hot and cold, therein defining the agreement first as one of partnership and later as a contract of employment. Notwithstanding that in the forepart of that complaint he refers to the agreement as a partnership, he later in paragraph VII of that pleading alludes to himself as Mallory's employee, alleging that Mallory on September 9, 1950, "did wrongfully and arbitrarily discharge plaintiff * * * Kelley from his *employment*" and "prevented said plaintiff from carrying on his * * * *employment* under said agreement * * * causing said plaintiff to be deprived of and to lose the additional sum of $6,288.00 for *loss of wages* due said plaintiff under said agreement and *employment*". (Italics ours.)

We submit that under the pleading referred to, the question of whether or not plaintiff was entitled to an accounting under the agreement as a partner or an employee was before the court in the earlier suit. We stress this feature of the first complaint for the reason that plaintiff Kelley in the second suit predicates his right to an accounting solely on the theory of being an employee with a regular monthly wage, augmented periodically by a share in the profits.

The second or instant suit abandons the "partnership" theory and, while the second complaint does not attempt to define the particular legal relationship, if any, subsisting between the parties, we were told forthrightly at the time of the oral argument that Kelley now claims as an employee of Mallory under the agreement of April 1948.

Because of its importance in the ultimate determination of the question of res judicata, we set out the provisions of the decree in the first case:

"Upon motion of plaintiffs and defendant Fred N. Mallory for an Order and Decree dismissing the above entitled and within suit with costs to defendants on account of a failure of proof on the part of the plaintiffs to prove a partnership between plaintiffs and defendants herein, and good cause being shown therefor and upon a trial and hearing ending on February 5, 1952, at St. Helens, Oregon, in the above court and cause, and all parties being present in court and represented by their respective attorneys, John F. Conway as attorney for plaintiffs, Glen R. Metsker as attorney for defendant Fred N. Mallory, and G. A. Heikkila as attorney for defendant Loretta P. Mallory, and plaintiffs having adduced evidence and rested, and defendants did not introduce any evidence but rested, and then defendant Fred N. Mallory moved this court for a Decree dismissing this cause for said reasons, and plaintiffs made a similar motion the same day,

"And the Court having considered the evidence and said motions and the records and files herein, and being now fully advised in the premises, finds that the evidence of plaintiffs discloses that there never was a partnership existing between the plaintiffs and defendants in the above entitled suit, and that said Motions are well taken and should be allowed.

"NOW, THEREFORE, IT IS HEREBY ORDERED AND DECREED that the above entitled and within suit shall be and it hereby is dismissed, and that said defendants shall have and recover a judgment against said plaintiffs for their costs and disbursements incurred herein."

Defendant's plea of res judicata projects these questions: First, is the foregoing decree, predicated

upon the merits, final in character and prejudicial to another suit for the same cause? Second, is the cause of action in this suit the same cause of action or any part of the cause of action pleaded in the first suit?

The right to invoke res judicata in defense finds its authority in ORS 18.220 reading:

"Whenever upon the trial of a suit it is determined that the plaintiff is not entitled to the relief claimed or any part thereof, a decree shall be given dismissing the suit, and such decree shall have the effect to bar another suit for the same cause or any part thereof, unless such determination is on account of a failure of proof on the part of the plaintiff, in which case the court may, on motion of the plaintiff, give such decree without prejudice to another suit by the plaintiff for the same cause or any part thereof."

ORS 43.160 should also be considered in conjunction with ORS 18.220. It provides:

"That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

This court, speaking through Mr. Justice Tooze, recently said in *Wagner v. Savage, as Adm'r,* 195 Or 128, 146-147, 244 P2d 161:

"The law is well established that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action. However, if the two suits do not involve the same claim, demand, and cause of action, such effect will not ordinarily be given to the prior judgment. To give

such effect, there must not only be identity of subject matter, but also of the cause of action, so that a judgment in a former action does not operate to bar the subsequent action, where the cause of action is not the same, although each action relates to the same subject matter.

"But if the subsequent proceeding be between the same parties, or their privies, and is based upon the same claim or cause of suit as that in the prior case, the judgment in the first suit is not only a bar as to all matters actually determined therein, but also as to every other matter which the parties might have litigated and had decided as incident to or essentially connected therewith, either as a matter of claim or defense. However, if the subsequent action is upon a different claim or demand, the former judgment can only operate as a bar or an estoppel as against matters actually litigated or questions directly in issue in the former action. Winters v. Bisaillon, 153 Or 509, 513, 57 P2d 1095, 104 ALR 968; Ruckman v. Union Railway Co., 45 Or 578, 581, 78 P 748, 69 LRA 480; 30 Am Jur, Judgments, 925, § 180.

"As a general proposition, it may be stated that the principle of res judicata applies as well in equity as at law * * *."

The rationale of res judicata as a bar is found in *Winters v. Bisaillon,* 153 Or 509, 515, 57 P2d 1095, 104 ALR 968, where it is said:

"The doctrine of res adjudicata rests upon the two maxims that 'A man should not be twice vexed for the same cause' and that 'It is for the public good that there be an end to litigation'. It is broad enough to include 'merger in judgment' and 'estoppel by judgment', as both are grounded upon the same fundamental precepts that it is for the benefit of society that there be an end to litigation and that no litigant should be vexed twice over the same dispute."

■ To determine whether the decree in the first suit was one "without prejudice" as argued by plaintiff or "with prejudice" as contended by defendant, we must again refer to ORS 18.220. It will there be observed that that section authorizes two different kinds of decrees effecting dismissal of suits in equity. The first rests upon a motion made by either the plaintiff or the defendant, or by the court on its own motion, and when allowed results in a decree with "the effect to bar another suit for the same cause or any part thereof". Better practice dictates that when the motion is thus employed by the defendant, it should be made only after both parties have rested. *Newman v. Stover,* 187 Or 641, 643, 213 P2d 137. The legal effect of the defendant's motion is to submit the evidence for *decision on its merits,* as contemplated by ORS 18.220. *Newman v. Stover,* supra, at pages 644-645. Indeed, a decree dismissing a suit in equity with prejudice can only be made, as here, after a full hearing on the merits. *Newman v. Stover,* supra; *Roles v. Roles Shingle Company,* 147 Or 365, 372, 31 P2d 180. When defendant's motion for dismissal under the statute is seasonably presented and favorably acted upon, the resultant decree operates as res judicata. *In re Estate of Anderson,* 192 Or 441, 462, 235 P2d 869. When such a motion for dismissal is employed by a plaintiff with the intention to bar another suit, it is usually invoked, although not so limited in use, as a means of terminating the suit because of some settlement satisfactory to the plaintiff.

■ The second type of decree of dismissal authorized by ORS 18.220 is available to the plaintiff alone and then only upon plaintiff's motion "on account of a failure of proof on the part of the plaintiff". *Wolke et al. v. Schmidt et al.,* 112 Or 99, 104, 228 P 921.

Such a motion when made by a plaintiff, if allowed by the court, will result in a "decree without prejudice to another suit by the plaintiff for the same cause or any part thereof." "Failure of proof", as used in ORS 18.220, does not mean a failure to convince the court by a preponderance of the evidence offered and considered but a failure to make a prima facie case. *Crim v. Thompson,* 112 Or 399, 412, 229 P 916; *Haney v. Parkinson,* 72 Or 249, 254, 143 P 926, Ann Cas 1916D 1035.

The foregoing review of ORS 18.220 is necessary to an understanding of our determination of the kind of decree entered in the first suit in response to the motion made by the defendant and thereafter to the similar motion by the plaintiff.

■ Ordinarily, the question of former adjudication is answered by a mere inspection of the decree, the presumption being that a dismissal in equity, without qualifying words, is a final decision on the merits. *Swift v. McPherson,* 232 US 51, 58 L ed 499, 34 SC 239. Also see *Haney et al. v. Neace-Stark Co. et al.,* 109 Or 93, 125, 216 P 757, 219 P 190; 2 Freeman, Judgments 5th ed, 1602, § 760; 1 Van Fleet, Former Adjudication, 156, 167, §§ 37, 44.

When we inspect the decree in the first suit, we find the court indulged in a rather unusual procedure. It ruled upon both motions at the same time and with the same result, i.e., a dismissal of the suit. This could be accomplished and justified only by the fact, as recited in the decree, that both the motion of the plaintiff and the motion of the defendant were "similar". As we have before noted, under ORS 18.220 there is only one motion available to both parties which could be similar in content. That motion, if allowed, always

produces a decree of dismissal *with prejudice*. We have also noticed that neither the court nor the defendant can move for a decree dismissing a suit without prejudice. Therefore, the fact of similarity in the motions and the recitals of the decree indicating that the court had examined all the evidence necessarily warrants the conclusion that the dismissal in the first suit was with prejudice. It also evidences the court's determination "that the plaintiff is not entitled to the relief claimed or any part thereof". The relief claimed in the first suit, as in the second, was for an accounting between the parties.

■ The right, if any, to an accounting in both suits sprang from the same evidence, i.e., the agreement between the parties dated April 2, 1948. Plaintiff contends that this agreement gave rise to a fiduciary relationship warranting the interposition of equity for the purpose of an accounting. In 1 CJS 655, Accounting, § 19, we find: "Where a fiduciary or trust relationship exists between the parties * * * equity will assume jurisdiction to compel an accounting, and no partnership relation need exist. No particular words are necessary to create the relation * * *." Also see *Templeton v. Hollinshead et al.*, 119 Or 620, 624, 250 P 747. Proof of "partnership" was, therefore, unnecessary and unimportant if the agreement appended as an exhibit gave rise, in fact, to a fiduciary relationship obligating the defendant to account to the plaintiff.

■ In response to the first question raised by defendant's plea of former adjudication, we hold that the decree in the earlier suit between the parties was a decision on the merits, final in character and a bar to another suit upon the same cause.

■ The scope and inclusiveness of such a judgment rendered on the merits is stated in *Crow v. Abraham,* 86 Or 99, 105, 167 P 590, in these words:

"* * * When a judgment is rendered upon the merits in a former action, such determination operates as a bar or estoppel against the prosecution or defense of a subsequent action, and is a finality as to the claim or demand sued upon, concluding the parties and those in privity with them not only as to every matter that was put forth to sustain such claim or demand, but also as to any other admissible matter that might have been offered for that purpose * * *."

This rests upon the authority of Mr. Justice Field's classic decision in *Cromwell v. County of Sac,* 94 US 351, 352, 24 L ed 195.

We now turn to a consideration of the second and related question projected by the plea of res judicata and examine plaintiff's complaint in the instant matter to determine if it reveals a suit for "the same cause or any part thereof."

The term "cause of action" as defined in Phillips, Code Pleading 1st ed, 27, § 30, has been approved by this court. See *Hunter v. Cunning,* 176 Or 250, 282, 154 P2d 562, 157 P2d 510; *Elliott v. Mosgrove,* 162 Or 507, 544, 91 P2d 852, 93 P2d 1070. Section 30 reads:

"The question to be determined at the threshold of every action is, whether there is occasion for the state to interfere. Therefore, when a suitor asks that the public force be exerted in his behalf, he must show that there is, *prima facie,* occasion for the state to act in his behalf. That is, he must show a right in himself, recognized by law, and a wrongful invasion thereof, actual or threatened. And since both rights and delicts arise from operative facts, he must affirm of himself such investitive

fact or group of facts as will show a consequent legal right in him, and he must affirm of the adversary party such culpatory fact or facts as will show his delict with reference to the right so asserted. The formal statement of operative facts showing such right and such delict shows a *cause for* action on the part of the state and in behalf of the complainant, and is called, in legal phraseology, a *cause of action.*"

The "operative fact" upon which plaintiff rests his right to an accounting in both suits is the contract of April 1948. The "delict" or culpatory act arising from the "operative fact" is likewise the same in both suits, i.e., the defendant's failure to account to plaintiff for certain profits alleged to have arisen from defendant's operation of the Mallory Chevrolet Company.

Thus we find plaintiff employing the same vehicle in this suit, that is, the agreement of 1948, that he used in the first to carry him to the same destination or objective, namely, an accounting between the parties.

■ We therefore are of the opinion that the instant or second suit is for the same cause as pleaded in the first suit. Since we have concluded that the decree of dismissal in the first suit was a final judgment on the merits, it follows that it is res judicata and a bar to the cause here pleaded.

Affirmed.