Argued at Pendleton October 28; affirmed December 22, 1931

# FIRST NATIONAL BANK OF WALLA WALLA *v.* MURRAY ET UX.

### (6 P. (2d) 233)

*E. C. Prestbye* of Athena, and *Will M. Peterson*, of Pendleton (Watts &·Prestbye, of Athena, and Peterson & Lewis, of Pendleton, on the brief), for appellants.

*S. D. Peterson,* of Milton, and *John F. Watson,* of Walla Walla, Wash. (Pedigo, Watson & Gose, of Walla Walla, Wash., S. D. Peterson, of Milton, and Francis A. Garrecht, of Spokane, Wash., on the brief), for respondent.

BELT, J. This is a suit by the First National Bank of Walla Walla, Washington, in its own behalf, and as trustee for the Old National Bank of Spokane, Washington, to foreclose a mortgage on approximately

1,200 acres of land in Umatilla county, Oregon, given to secure the payment of six promissory notes executed by defendants, dated March 5, 1926, and aggregating $102,969.61. The sole assignment of error on appeal is lack of consideration, although much of the argument in the brief pertains to the question as to whether the defendants were induced to execute the mortgage by reason of fraudulent representations. From a decree of foreclosure the defendants appeal.

The case presents a story of frenzied finance in which three banks were victimized through the fraudulent and crooked dealings of John Cameron, president of the Cameron-Yenney Grain Company, a corporation engaged in general grain brokerage business in Eastern Washington and Eastern Oregon. His check kiting operations and other criminal business transactions finally landed him in the penitentiary. Gambling in wheat is a hazardous business and, with a rapidly falling market, the Cameron-Yenney Grain Company was soon to go upon the rocks. The financial difficulties of the Grain Company involved the banks. The Bank of Freewater, with a capital stock of $30,000 and a very small surplus, had overdrafts issued by the Cameron-Yenney Grain Company aggregating $135,000. The Old National Bank of Spokane was a creditor of the Cameron-Yenney Grain Company in excess of $100,000. The First National Bank of Walla Walla was also a large creditor of the Grain Company. The Bank of Freewater was indebted to the Old National Bank in the sum of about $90,000 and to the First National Bank upon a dishonored draft for $13,000. On the first and second days of March, 1926, the Cameron-Yenney Grain Company issued drafts payable to the Bank of Freewater aggregating $89,545.80, which the latter endorsed and forwarded to the Old National

Bank—not for the purpose of collection but in payment of its indebtedness. These drafts were dishonored but were held by the bank at Spokane and not turned back on the Bank of Freewater, for to have done so would have undoubtedly meant the ruin of the latter institution. The defendant Murray, as chief executive of the bank at Freewater, was desperate. What could he do to avoid the impending crash?

A meeting was held on March 4, 1926, in the offices of the First National Bank at Walla Walla, by executive officers of the three banks, to consider primarily the liquidation of the assets of the Cameron-Yenney Grain Company and to join in the request for the appointment of a receiver. Murray was there, pale-faced and trembling. His responsibility to the depositors in his small bank weighed heavily on his mind. So, too, he might well have been thinking of the criminal statutes relative to the management and operation of state banks. Capital stock of $30,000 and an overdraft of $135,000 would cause most bank executives to tremble with fear.

Two days after the above meeting, the defendant Murray went to Spokane to see if a loan could be obtained whereby his bank would be saved. It was necessary to raise. sufficient funds to take care of the $89,545.80 in drafts which the Spokane Bank held, the dishonored draft of $13,000 with the First National, overdrafts held by the Bank of Freewater issued by the Grain Company—aside from those forwarded to Spokane—amounting to $46,000, and in addition there was need of the sum of approximately $35,000. After the officials of the Spokane Bank had consulted with those of the First National at Walla Walla, it was decided to accept the mortgage of defendants to cover the drafts held by the two banks as above stated,

aggregating $102,969.61. Prior to the execution of the mortgage, the Spokane Bank, in furtherance of the defendant's program to save the bank at Freewater, loaned to the defendant on his unsecured note the sum of $13,000. An additional sum of $20,000 was borrowed from other sources. So it was that the Bank of Freewater was able to weather the storm for two or three years more. Regardless of the motives of Murray— whether he was prompted by a magnanimous spirit or by fear of prosecution—the depositors did not lose.

■ Relative to the issue of fraud, defendants allege that they were induced to assume and agree to pay the indebtedness of the Bank of Freewater to the plaintiff and to the Old National Bank of Spokane by reason of fraudulent representations that the Cameron-Yenney Grain Company would pay to its creditors approximately 40 per cent of its indebtedness and that Harriet Cameron, the wife of John Cameron and sister of John Ankeny of the First National Bank, would render financial assistance to her husband to the end that the various claims against the Cameron-Yenney Grain Company would be liquidated. It was further charged that the defendants were induced to execute the notes and mortgage upon the understanding and agreement that the same would be used by the plaintiff and the Bank of Spokane "as a loan of credit only" and that the defendants "would not be called upon to pay said notes nor any part of them nor any interest thereon."

The charge of fraud is utterly without merit. It is predicated largely upon a letter which was dictated by G. H. Greenwood, cashier of the Bank of Spokane, and addressed to the First National Bank of Walla Walla, at the meeting, on March 4, 1926, of the bank officials at Walla Walla, where the financial status of the Cameron-Yenney Grain Company was considered. Among

other things, it was stated in this letter, which was signed by the defendant Murray as president and George A. Price as cashier of the Bank of Freewater, that "we understand from conversations with your Mr. Winans and Mr. Pedigo that there will probably be sufficient collateral available to liquidate the entire indebtedness." While we think Mr. Greenwood was entirely too optimistic relative to the assets of the Cameron-Yenney Grain Company, since in the bankruptcy proceedings its creditors realized only an 8 per cent dividend on their claims, the defendant Murray was not misled. As a man of business experience, he must have known that it would be impossible at such time to state with any degree of certainty the extent of the liquidation of the Cameron-Yenney Grain Company. Furthermore, the statement appeared upon its face as merely the expression of an opinion and not as an assertion of fact. Neither do we find any substantial evidence tending to show that the wife of John Cameron ever agreed to finance the company of which her husband was president. Indeed, she was strongly advised by Mr. Pedigo, director and attorney for the First National Bank, against such course.

The contention of the defendant that the notes and mortgage were executed merely for the purpose of loaning credit to the Bank of Freewater during the time in which the assets of the Grain Company could be liquidated is wholly inconsistent with the course of conduct of all the parties involved in the transaction. Throughout the extensive correspondence which passed between Murray and the Old National Bank of Spokane there is evidence of a clear intention on the part of the former to recognize the mortgage as a binding obligation. If this instrument was merely a "loan of credit" why did he at various times make, without

protest, payments of interest on the notes? Why did he plead for extension of time when the banks were pressing him for payment? On April 10, 1928, Murray wrote to J. W. Bradley, vice president of the Old National Bank:

"You mention that nothing has been paid on the amount referred to but you are aware that I have paid approximately $35,000.00 on account of this same deal part of which was paid to your bank and originally was unsecured and you are also aware of the fact that the Trustee in Bankruptcy of the Cameron-Yenney Grain Company has made no distribution to the creditors, and that any amount distributed to me is assigned *to reduce my indebtedness with you.*" (Italics ours.)

Several other letters could be mentioned wherein there was a clear recognition by Murray of his indebtedness to the two banks. In consideration of the notes and mortgage executed by defendants, the Old National Bank, on March 31, 1926, gave the Bank of Freewater credit on its overdrawn account for the amount of the Cameron-Yenney Grain Company's drafts which had been endorsed and forwarded to it by the Bank of Freewater. Mr. Moody, vice president of the Spokane Bank, testified positively to having personally made entry in the bank books whereby the Bank of Freewater was given credit for $89,545.80, the amount of its overdrawn account. Mr. Winans of the First National testified in reference to the notes and mortgages as follows:

"Q. Now what was the consideration for those notes?

A. That was an unpaid draft of the bank of Freewater on the People's State Bank of Walla Walla for that amount, the amount of the principal of those two notes.

Q. Now then why wasn't it paid, if you know, the draft of the bank of Freewater on the People's State Bank?

A. It was refused for lack of sufficient funds, marked that way and returned to us, to the First National Bank of Walla Walla, unpaid.

Q. How did that leave the First National Bank of Walla Walla?

A. That left us with a claim against the bank of Freewater for thirteen thousand dollars the amount of the draft.

Q. The bank of Freewater was indebted to the First National Bank?

A. Yes, sir.

Q. Did you collect that from the bank of Freewater?
A. We did not.

Q. That was taken up by Murray in these notes, wasn't it?

A. It was.''

When the drafts were issued by the Cameron-Yenney Grain Company, the Bank of Freewater did not forward the same for collection but gave the company credit for the amount thereof. After the execution of the mortgage, we note in the sworn statement of the Bank of Freewater, under date of April 22, 1926, that its "overdrafts secured and unsecured" amounted to only $387.63. What became of the overdrafts aggregating $135,000? The only reasonable deduction is that they were charged off the bank books by reason of the mortgage executed by the defendants.

Furthermore, we note the assignment by the Bank of Freewater, on March 4, 1926, to H. S. Murray, of its claim against Cameron-Yenney Grain Company for the amount of the drafts. On March 29, 1926, H. S. Murray assigned this claim against Cameron-Yenney Grain Company to the First National Bank as collateral security and to enable it to recover what it

could in the bankruptcy proceedings wherein the assets of the Cameron-Yenney Grain Company were being liquidated.

■ Unquestionably the notes and mortgage were executed by defendants as a part of the plan to save the Bank of Freewater from immediate failure. Can it be said that the defendant Murray was not thus benefited? The First National and the Old National Bank of Spokane were not responsible for the situation which had arisen. Murray's plan to save the depositors and, perhaps, himself from serious difficulty had succeeded. It ill behooves him to say there was no consideration for the mortgage.

The First National and the Old National Banks forbore to prosecute their claims against the Bank of Freewater in consideration of the obligation which the defendants assumed. But it is urged that mere forbearance does not constitute consideration. Such may be conceded to be the law in this and other jurisdictions, but it is equally well established that an implied agreement to forbear may be inferred from all the facts and circumstances: *First National Bank v. Cecil,* 23 Or. 58 (31 P. 61, 32 P. 393) ; 6 R. C. L. 659; and see cases in note to 19 L. R. A. (N. S.) 842.

In our opinion, the evidence warrants a stronger inference than an implied agreement to forbear to sue the Bank of Freewater. It supports the conclusion that the debt of the Bank of Freewater was canceled in consideration of the obligation of the defendants.

The decree of foreclosure is affirmed.

ROSSMAN and CAMPBELL, JJ., not sitting.