Argued February 19; affirmed March 24; rehearing denied
April 28, 1936

# SKINNER *v.* RICH ET AL.

(55 P. (2d) 1146)

*E. L. Crawford,* of Salem, for appellant.

*William H. Trindle,* of Salem (Ronald C. Glover, of Salem, on the brief), for respondent Albert Rich.

*John H. Carson,* of Salem, and Rex Albright, of Silverton (Carson & Carson, of Salem, on the brief), for respondent A. L. Brougher.

BELT, J. This is an action by the State Superintendent of Banks to recover the amount due under an alleged contract entered into between the State Bank of Scotts Mills and the defendants who were stockholders in such bank. A general demurrer interposed by the defendant Brougher to the amended complaint was sustained and, upon refusal of the plaintiff further to plead, the action was dismissed.

After alleging the appointment and qualification of the plaintiff as superintendent of banks and the incorporation of the State Bank of Scotts Mills, the plaintiff alleges:

### III.

"That on or about September 23, 1931, defendants for value, covenanted to and with State Bank of Scotts Mills under their hands and seals to pay to the State Bank of Scotts Mills the sum of $1,250.00 on or before

December 31, 1931, and the further sum of $2,000.00 on or before December 31, 1932, a substantially true copy of which covenant and bond is hereunto attached, marked 'Exhibit A' and made a part of this amended complaint.

### IV.

"That said sums have not been paid, nor any part thereof, except that the sum of $1,250 accruing December 31, 1931, has been paid in full, and that there is now due, owing and unpaid upon said bond the full sum of $2,000.00, together with interest thereon at the rate of six per cent per annum from December 31, 1932, until paid.

### V.

"That on April 28, 1932, the State Bank of Scotts Mills and the business and affairs thereof were taken in charge by the above-named plaintiff for the purpose of liquidation, and that said bond and covenant was a part of the assets of said State Bank of Scotts Mills, and that plaintiff now is the owner and holder thereof, as Superintendent of Banks of the State of Oregon.

### VI.

"That said defendants further promised and agreed that should suit or action be brought upon such bond and covenant that they would pay in addition to the costs and disbursements allowed by statute, such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action, and that $200.00 is a reasonable sum for the court to allow plaintiff as attorney's fees for the prosecution of this action for the collection of said bond and covenant."

The contract referred to in the amended complaint, so far as material herein, is as follows:

"WHEREAS, the Superintendent of Banks acting in conformity to the laws of the State of Oregon has demanded and requested a reduction of the investment in certain fixed assets; and

"WHEREAS, such elimination or reduction would impair the capital of said bank and render necessary

an assessment upon the shares of the capital stock of said bank; and

"Now THEREFORE, for value received and in order to prevent said assessment we, J. O. Dixon, Albert Rich and A. L. Brougher of Scotts Mills, Oregon, and each of us, each and all being stockholders in said State Bank of Scotts Mills, acknowledge ourselves to be held and firmly bound, jointly and severally, unto the State Bank of Scotts Mills, Scotts Mills, Oregon, its successors and assigns, *guarantee the reduction* of the above mentioned fixed assets from the present book value of $7682.00 to $4432.00, for which reduction or payment, together with all costs of suit and attorney fees, together with interest thereon, in the event suit is brought on this obligation, well and truly to be made, we, and each of us, bind ourselves, our heirs, administrators, executors and assigns, jointly and severally, *conditioned that said reduction bearing our guarantee* need only be made in the amount of $1250.00 on or before December 31, 1931, and the balance of $2000.00 on or before *December 31, 1932, and if not so made* or removed from the assets of the banks by the time specified, this guarantee to be due and collectible forthwith.

"We expressly agree in signing this instrument that this instrument shall be construed to be and is an absolute guarantee of said reduction of fixed assets protecting the bank and its depositors in the amount above set forth. This guarantee shall never be released or cancelled by said bank without the express written consent of the Superintendent of Banks of the State of Oregon or his successor in office." (Italics ours.)

The defendant Rich did not demur but filed an answer to the amended complaint in which he denied generally the material allegations thereof and, as an affirmative defense, alleged:

I.

"That on or about the 23rd day of September, A. D. 1931, the defendant jointly with the State Bank of

Scotts Mills, J. O. Dixon and A. L. Brougher, entered into a certain contract and agreement, substantially in terms and conditions as set out and described in Paragraph III of plaintiff's complaint as 'Exhibit A'.

## II.

"That said contract and agreement was made and executed by this defendant for the purpose only of guaranteeing the compliance by the State Bank of Scotts Mills, a banking corporation, with an arbitrary demand of plaintiff, A. A. Schramm, Acting Superintendent of Banks of the State of Oregon, that the fixed assets of said State Bank of Scotts Mills should be reduced on the books of said Bank of Scotts Mills from a book value of $7,682 to a book value of $4,432; said reduction to be made: $1,250 thereof on or before December 31, 1931, and the balance of $2,000 on or before December 31, 1932.

## III.

"That in compliance with the terms and conditions of said guaranty, the said State Bank of Scotts Mills did, on or before December 31, 1931, reduce the book value of its fixed assets in the amount of $1,250 in accordance with the terms and conditions of said contract and agreement.

## IV.

"That prior to the 31st day of December, 1932, and to-wit: on the — day of April, 1932, the performance of the condition in said bond contained for the reduction of said assets in the amount of $2,000 on or before December 31, 1932, was rendered impossible to perform by said State Bank of Scotts Mills, and by this defendant, by operation of law, in that the plaintiff herein, A. A. Schramm, as Superintendent of Banks of the State of Oregon, took charge of and assumed control of said State Bank of Scotts Mills and of all its assets and immediately began to liquidate said bank and dispose of its assets for the benefit of its several creditors.

## V.

"That from and after said —— day of April, 1932, said State Bank of Scotts Mills was at all times in charge of and under the control of the plaintiff herein by reason of which it was impossible for the said State Bank of Scotts Mills and for this defendant to cause the reduction in fixed assets to be made as herein designated."

The defendant Dixon made no appearance.

A demurrer to the further and separate answer was interposed by plaintiff who, upon the same being overruled, refused further to plead. Judgment was entered dismissing the action as against the defendant Rich. Plaintiff appeals from both judgments.

■ The amended complaint is drawn on the theory of an absolute and unconditional promise of the defendant stockholders to pay to the bank the sum of $2,000 on or before December 31, 1932. The plaintiff purports to plead the legal effect of an instrument which has been set out in haec verba and made a part of the pleading. Hence it is the instrument itself that prevails and not the conclusions of the pleader as to the legal effect thereof: *Young v. Evans,* 104 Or. 619 (208 P. 741) ; *O'Neil v. Twohy Bros. Co.,* 98 Or. 481 (190 P. 306).

It appears from the writing in question that the Superintendent of Banks had demanded a reduction in the book value of certain fixed assets of the bank and that, to avoid assessment for the purpose of restoring the impaired capital, the defendant stockholders covenanted to pay to the bank the sum of $1,250 on or before December 31, 1931, and the balance of $2,000 on or before December 31, 1932, in the event that reductions in the fixed assets were not made by the bank in the above amounts on the dates specified. More briefly

and simply stated, the defendants agreed to pay certain sums of money to restore impaired capital if the bank did not make up such deficiency within the above specified time. Defendants only ''guaranteed'' to pay in lieu of an assessment should the bank fail to make the reduction in assets demanded by the Superintendent of Banks, the ''reduction in fixed assets'' meaning the difference between the book value of such assets and the ''actual cash market value'' thereof.

■ We can not agree with appellant that the obligation to pay was primary and unconditional. The instrument speaks for itself in that respect. Certainly if the bank, through its earnings or by reason of a legally authorized reduction in its capital, had met the objections of the Superintendent of Banks to the book value of certain fixed assets, there would be no liability on the part of the defendant stockholders. We hold, therefore, that the obligation of the defendants to pay was secondary. There could be no liability established against the defendants under the instrument set forth in the amended complaint until it was shown that the bank had failed to restore its impaired capital within the time specified. The failure of the bank so to do was not alleged by plaintiff, although it was essential to a statement of the cause of action. It follows that the trial court did not err in sustaining the demurrer to the amended complaint.

■ This ruling on the demurrer, however, does not inure to the benefit of the defendant Rich who answered: 49 C. J. 578. While the amended complaint was defective as above stated, the answer cured such defect by alleging in substance that the bank was unable to make a reduction in its fixed assets. As stated in *Toon v. Wapinitia Irr. Co.,* 117 Or. 374 (243 P. 554):

"In this jurisdiction it is a well-settled rule of pleading that, where the plaintiff omits necessary averments from his complaint, which averments are supplied by defendant in his answer, the defect is cured."

■ The defendant Rich, however, is not precluded from raising other objections to the pleading even though he saw fit to answer. Objection that a complaint fails to allege a cause of action may be presented even for the first time on appeal.

■ We see no merit in the contention of the defendant Rich that the alleged contract is without consideration. The defendant stockholders were threatened with an assessment in order to operate the bank. The forbearance to demand such assessment constituted the consideration. The defendants were undoubtedly benefited by such forbearance: *Coast National Bank v. Bloom,* 113 N. J. L. 597 (174 Atl. 576, 95 A. L. R. 528), and numerous cases collated in A. L. R. note. Also see *First National Bank v. Murray,* 138 Or. 255 (6 P. (2d) 233).

The capital of a bank is deemed to be impaired within the meaning of section 22-1802, Oregon Code 1930, "when the actual cash market value of the assets of such bank or trust company is insufficient to pay its liabilities plus the amount of its paid-up capital stock". When the capital of a bank has been impaired it is the duty of the stockholders, under the above section of the statute, to make an assessment on the stock sufficient to cover such impairment of capital or "to reduce the capital of such bank or trust company to the extent of such impairment, if such reduction will not place said capital below the amount required by law". The object and purpose of such statutory requirement is the protection of the public in dealing with the bank. There is no protection to the public when a bank with

an impaired capital is permitted to operate as a going concern. The contract in question executed by the bank and the defendants did not serve the purpose of restoring the impaired capital. It was, indeed, a poor substitute for an assessment on stockholders. The defendants as obligors under the bond were in no event obliged to pay until some future date. The arrangement was wholly dissimilar to those involved in cases where the directors, to avoid an assessment on stockholders, advanced cash or executed notes which the bank discounted in order to build up a "reserve fund".

■ Furthermore we think the parties who executed the contract had in contemplation the continued operation of the bank until, at least, the date of final payment, December 31, 1932. Could it be that the defendants would thus have obligated themselves if they had anticipated that the bank, within a few months, would be taken over for liquidation? It is far more reasonable to believe that the parties contracted upon the assumption or implied condition that the bank would continue to operate. In obligating themselves under the bond the defendants were entitled to the chance that the bank might, through earnings or otherwise, be able to restore its impaired capital before they would be called upon to pay. It, however, appears from the complaint that, through operation of law, the bank on April 28, 1932, was taken in charge by the plaintiff for the purpose of liquidation. When this occurred the bank no longer had the opportunity to restore its impaired capital. It is beside the question to say that the defendant had the opportunity to do so. The principles of law announced in *Lorillard v. Clyde,* 142 N. Y. 456, (37 N. E. 489, 24 L. R. A. 113), are applicable although the case is based upon a different state of facts.

The bond provided in effect that if the bank were unable to make up the deficiency, through earnings or otherwise, the defendants would pay the sum necessary to restore the impaired capital. To recover on such bond it was essential to allege and prove the failure of the bank to restore its impaired capital. No condition subsequent is involved. If a primary and direct obligation had been intended, the defendants would have executed their promissory notes. It is conceded, as an abstract proposition, that an assessment for the purpose of restoring impaired capital and one for the liquidation of the bank are separate and distinct. Such question, however, is not involved in the instant case.

Appellant relies strongly upon *Love v. Dampeer,* 159 Miss. 430 (132 So. 439, 73 A. L. R. 1376), a case involving liquidation of a bank. The court upheld a contract executed by the defendant directors wherein they guaranteed the payment by November 1, 1927, of certain notes owned by the bank. This case is distinguished from the one at bar in that the bank was not taken over for liquidation until August 10, 1928, or after the time the obligations of the guarantors matured. The court held that the complaint was not vulnerable to a demurrer. It is significant that it was therein alleged that the bank failed to collect the amount due on the notes. In other words, the obligation of the defendant directors was secondary and not a primary one as here contended. Such allegation does not appear in the reported opinion but is shown in the copy of the complaint which we have obtained. The contract in the Dampeer case is entirely different from the one under consideration. The same may be said concerning the contract involved in *Coast National Bank v. Bloom,* supra.

We conclude that the amended complaint herein fails to allege facts sufficient to constitute a cause of action whether tested by demurrer or after issue joined by answer.

The judgments are affirmed.

CAMPBELL, C. J., and KELLY, J., concur.

———

ROSSMAN, J. (dissenting). I agree with the conclusion expressed by the majority that the defendants' liability upon the instrument which they signed was a conditional one. But that, in my opinion, does not of itself settle the issue of whether the demurrer was properly sustained to the complaint. We must go a step further and inquire whether the condition was precedent or subsequent. The majority states that "if the bank, through its earnings or by reason of a legally authorized reduction in capital" had met the plaintiff's demands, the defendants' liability upon the instrument under review would have been terminated. Those were the conditions to the defendants' liability. If the conditions were precedent, the complaint should have averred that the earnings did not make up the deficiency and that the capital was not reduced (Phillips, Code Pleading, § 329), although the averments could have been of a very general character (§ 1-805, Oregon Code 1930). But if the conditions were conditions subsequent, it was unnecessary to mention them in the complaint: Phillips, Code Pleading, § 348; Pomeroy's Code Remedies (5th Ed.) § 471, p. 779; 49 C. J., Pleading, § 157, p. 146; and 21 R. C. L., Pleading, § 27, p. 462. From Clark on Code Pleading, § 45, p. 192, the following is taken:

"In any event, the courts strive to construe conditions as subsequent, where possible, since in such case

nonperformance is considered matter of defense to be raised by the defendant.''

Williston on Contracts, § 66A, states:

''A condition precedent in a contract is the typical kind. It must be performed or happen before liability arises on the promise which the condition qualifies.''

In § 667 the same authority states:

''The term condition subsequent in contracts as used in contrast to condition precedent must mean subsequent to liability,—that is, a condition which divests a liability on a contract after it has once accrued.''

The following is taken from *Little Nestucca Toll-Road Company v. Tillamook County*, 31 Or. 1 (48 P. 465, 65 Am. St. Rep. 802):

''The rule is general that the plaintiff is under no legal obligation to the adverse party to advise him of the defense he should interpose, and under this rule the complaint in code pleading ought not to anticipate or negative a possible defense (Boone on Code Pleading, § 11; Bliss on Code Pleading, § 200; 4 Ency. Pl. & Prac., 614), and a condition which qualifies or defeats the plaintiff's suit, being a condition subsequent, may be safely ignored by him in the pleading.''

In other words, a condition subsequent is some contemplated event which the parties anticipated might occur and the occurrence of which they stipulated should terminate the liability upon the instrument which they were executing. The document itself, however, creates an immediate liability and the liability continues unless the event happens. Its occurrence terminates the liability. The statute of limitations is a good example. In the following much-quoted language the supreme court of Minnesota has given us a favorite test for determining whether the condition is precedent or subsequent:

''Where the obligation of a party to a contract is to pay only upon the happening of a contingency, e.

g. the return of an instrument duly recorded, such contingency is in the nature of a condition precedent, and its occurrence must be alleged in the complaint. * * * But, if payment is not to be made if a contingency happens during its continuance, e. g. if the party is enjoined from using the article which is the subject-matter of the contract, he is not to pay the purchase price until the injunction is dissolved, the contingency is in the nature of a condition subsequent, and it is not necessary to allege in the complaint the nonhappening or noncontinuance of the contingency." *Root v. Childs,* 68 Minn. 142 (70 N. W. 1087).

In the present instance, the assets of the bank had become depleted. It could no longer operate lawfully. The defendants were its stockholders. For the purpose of enabling the bank to continue to accept deposits, and for the further purpose of avoiding the assessment which the plaintiff could have imposed upon them through exercise of the power conferred upon him by § 22-1802, Oregon Code 1930, the defendants signed the document which we are now construing. If the majority has properly construed it, and if it created no immediate liability because the defendants' promises were subject to conditions precedent, then the purpose of the parties was defeated. In that event, their conduct in continuing to operate the bank was unlawful.

Obviously, the parties intended to create an immediate liability in favor of the bank. The bank's needs for supplemented assets were immediate and only paper which would fill the gap would suffice. Obviously, the defendants intended that the document which they signed should be a valuable asset of the bank, and that the banking superintendent should assign to it a sufficient value to make up the shortage. To use the defendants' own language, they signed the paper to protect "the bank and its depositors in the amount above

specified". Again quoting from the instrument: "We expressly agree in signing this instrument that this instrument shall be construed to be and is an absolute guarantee." Apparently, the defendants were unable to put into the bank's vaults the needed amount of money and gave the bank this instrument as a substitute for money. If the above does not represent their purposes, the bank's assets were still depleted after they signed the paper, and it could not lawfully accept deposits. We are required to presume that the parties acted honestly and that they intended to pursue a lawful course.

A conclusion is warranted that the document created an immediate liability in favor of the bank which could be terminated only by payment, or by the occurrence of the events previously mentioned. The conditions, therefore, were subsequent. In other words, the liability of the defendants was not dependent upon whether the earnings of the bank wiped out its deficits, nor upon whether the bank reduced its capital, thus removing the deficit, but the occurrence of either of these two events would terminate defendants' liability upon the document. Thus, those conditions, if they occurred, were defenses, not conditions precedent to liability. The defendants must know better than anyone else whether those conditions have occurred; hence, it is proper to require them to allege and prove those contingencies if they occurred. The demurrer should have been overruled.

Having construed the instrument in the above manner, it necessarily follows that plaintiff's act in taking possession of the bank did not terminate the defendants' liability which arose the moment they signed the paper. Only the specified conditions could

terminate it, apart from payment. Had the plaintiff exercised the rights conferred upon him by § 22-1802, Oregon Code 1930, followed by a stock assessment, liability to pay the assessment would not have been terminated by a closing of the bank. As already stated, the paper was signed to avoid the assessment. An assessment to restore impaired capital is independent of and additional to enforcement of statutory double liability of stockholders: *Delano v. Butler*, 118 U. S. 634 (30 L. Ed. 260, 7 S. Ct. 39); and *Duke v. Force*, 120 Wash. 599 (208 P. 67, 23 A. L. R. 1354).

I know of no reason why the defendants should be more favored by the execution of the document than they would have been had they paid in cash the assessment. The majority states that the parties contracted upon an "implied condition that the bank would continue to operate". Conditions that render the contract illegal and launch the parties upon an unlawful course of action are never implied by the courts, and, as shown in a preceding paragraph, such a condition would have rendered the bank's conduct in accepting deposits unlawful.

Let us remember that defendants' promise was made in behalf of the depositors. The latter were not present when the instrument was signed. The language of the instrument was chosen by the defendants. All doubts should be resolved against them and in favor of the persons for whose protection the document was signed. Had the assessment been levied, but remained unpaid when the bank closed, the defendants would not have been permitted to resort to the defense they now interpose. Their condition should not be deemed improved by having postponed the evil day through execution of the paper.

I dissent.