Argued March 15; affirmed April 10; rehearing denied
June 12, 1934

# ROLES *v.* ROLES SHINGLE COMPANY ET AL.

(31 P. (2d) 180)

*Charles W. Robison,* of Portland (C. M. Idleman and Manning & Harvey, all of Portland, on the brief), for appellant.

*George Black, Jr.,* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief), for respondents.

BAILEY, J. This suit was instituted by the plaintiff, J. A. Roles, against the Roles Shingle Company, a corporation, and four of its stockholders and directors, three of whom are brothers, and the fourth a nephew, of the plaintiff. According to the allegations of the amended complaint filed July 31, 1931, plaintiff is the owner and holder of 25 shares of the common stock of the defendant corporation, of the par value of $2,500, and the balance of the stock is owned by the four defendants and another brother of the plaintiff, each of whom owns an amount equal to plaintiff's holding.

The complaint further avers that shortly after the plaintiff and the individual defendants became associated together as stockholders, and on or about September 1, 1926, the individual defendants entered into a conspiracy to force plaintiff out of said corporation and compel him to sacrifice his stock holding in the corporation; that in order to carry out the conspiracy they wrongfully appropriated or diverted the profits of the corporation, paying the same to themselves on fictitious claims for back wages in excess of and contrary to the agreements entered into between the corporation and the individual defendants; that in

furtherance of said conspiracy the individual defendants have wilfully and wrongfully depreciated the value of plaintiff's stock by causing fictitious charges to be entered on the books and records of the corporation and by causing fictitious items of depreciation to be entered on said books; that the individual defendants have further diverted profits earned by the corporation, in such a manner as to prevent the corporation from paying the plaintiff or any of the stockholders any dividends; that by reason of said acts the corporation is now insolvent or in imminent danger of insolvency; and that the appointment of a receiver is necessary "to protect the interests of this plaintiff from being lost or destroyed".

The complaint further charges that the corporation did, for a number of years, conduct a "profitable and lucrative business, upon which a substantial net profit was earned, which said profit should have been declared as a dividend upon its stock", but all of which profit, together with other assets, had been diverted by the defendants in the manner hereinbefore set forth; and that the individual defendants were the directors and in control of the corporation and had refused to declare any dividends and had refused and neglected to have "any proper or legitimate audit made of their books and records", and refused to permit plaintiff to examine "the same, except the false and fictitious records and books set up by the defendants, as hereinbefore set forth". The prayer asks for the appointment of a receiver; that the defendants be required to give an accounting of the business and the money wrongfully diverted by them; and for such other relief as may be just and equitable.

The answer denies the allegations of the complaint relating to mismanagement and misappropriation and

affirmatively alleges that the stock of each of the six stockholders has a par value of $2,500, upon which only $500 has been paid by each of said stockholders. Defendants further aver that the officers and directors have performed their duties at all times honestly and faithfully and with due and proper regard for the interests of all the stockholders of the corporation; that the plaintiff has at all times had full and complete access to the books, records and accounts of the corporation; and that no just cause or reason exists for the defendants or any of them to render any account to the plaintiff.

The cause was heard in the latter part of October, 1931, by the Honorable Louis P. Hewitt, who, after taking the matter under advisement, entered a decree in favor of the defendants and against the plaintiff and dismissed the cause with prejudice.

The evidence fully establishes the following facts: In September, 1926, the plaintiff, the individual defendants and another brother of the plaintiff, purchased the common stock of the Dawkins Shingle Company, a corporation organized under the laws of Oregon in December, 1925, and engaged in the manufacture of shingles at Linnton, Oregon. Par value of its capital stock was $15,000 and in making purchase thereof the plaintiff and his four brothers and their nephew each purchased 25 shares of the par value of $100 a share and paid in cash for their respective holdings the sum of $500.

Four of the brothers, including the plaintiff, were experienced shingle makers and were then employed in that business. The fifth brother was driving a truck for a logging concern. At the time of the purchase of the stock the plaintiff was employed in a mill at Vernonia, Oregon, earning from $8 to $10 a day.

The shingle company which they took over was somewhat embarrassed for lack of funds, yet it was the expectation of the new stockholders that by hard work and close economy they could make a success of the venture, as owners rather than employes of the business which furnished their livelihood. The name of the corporation, shortly after purchase of the Dawkins business, was changed to Roles Shingle Company and the operations have since been conducted under that name. It was planned that this enterprise should be the family business and that all the new purchasers should devote all their time to it. Due to the lack of finances it was, however, agreed among the stockholders that the plaintiff should retain for a while his employment in the mill at Vernonia and contribute from his earnings there $3 a day toward the expenses of the Roles Shingle Company for each day that the Roles mill was operated, and that the other five purchasers should work for the new company and at first should receive $4 or $5 respectively per day, which was $3 less than the prevailing wage scale, for services performed by them, and permit the difference between the amount each received and the going scale of wages to accumulate as working capital for the corporation until such time as the finances of the corporation would warrant the payment of that part of the wages temporarily withheld. This understanding was had in October, 1926, and for some time nothing occurred to disturb the family tranquillity. The five men who were at the Roles plant worked from 10 to 15 hours a day, also on Sundays and holidays, while the plaintiff made it a practice to come from Vernonia on Sundays and other days when not there employed and to assist in and about the Roles shingle mill.

Sawing shingles was done on only one or two Sundays during the first year, and the evidence is not definite as to whether or not anything was paid to the stockholders for services on those days. The evidence, however, is clear and certain that nothing was paid to or expected by any of the stockholders for over-time or for work around the mill on Sundays when the mill was not actually sawing shingles.

It was testified to by the individual defendants that along in September or October of 1927 the wages of the stockholders employed in the mill were increased in conformity with the going wage scale. In December of that year the real trouble here involved seems to have begun, when, according to the testimony of the defendants, the company was in need of money to pay for logs and demand was made upon the plaintiff for payment of the $3 a day which he was to contribute, according to defendants' testimony, toward the working capital of the defendant corporation. The plaintiff refused the request and denied any understanding about such payment. A few days later all the stockholders of the corporation except the plaintiff, who was not an officer thereof, held a meeting at which it was voted to pay $3 per day to members of the company for each and every day worked, as indicated by the time sheet, from September, 1926, to October, 1927, as back wages. The amount of those ''back wages'', according to the books, was $3,721.30. And it is the action of the board of directors in authorizing the payment of this sum and the actual payment thereof which the plaintiff makes the principal basis of his demand for an accounting.

The entire business of the company was conducted as a family affair, with few formal meetings of the directors or stockholders. The proof establishes that the $4 and $5 daily wages paid to the stockholders who

worked for the corporation were not in full payment for their services but that the exigencies of the situation demanded that such stockholders permit the corporation to accumulate a working capital by temporarily foregoing the payment of approximately $3 a day each for their services and by plaintiff's contributing $3 a day. This was fully understood and agreed to by all the stockholders, including the plaintiff. The latter, however, after the other stockholders had, for approximately eleven months, performed their part of the understanding, both in letter and in spirit, repudiated the agreement and refused to advance any part of his promised contribution.

Although it would have been more orderly and businesslike, if the directors of the corporation had evidenced the understandings between the different stockholders by formal resolutions, rather than to proceed in the informal manner which they chose, nevertheless in such an instance as this, wherein all the stock of the corporation is owned by a few, and all or most of the stockholders are actively engaged in the enterprise of the corporation, it is often the practice to transact ordinary business without formal resolutions: *First National Bank v. Frazier,* 143 Or. 662 (19 P. (2d) 1091, 22 P. (2d) 325).

■ The evidence in this case is to the effect that all the stockholders, six in number, knew and consented to the agreement by which a part of the wages of those who were employed by the corporation was not to be withdrawn immediately upon becoming due, and that this agreement was based on plaintiff's promise to contribute or advance for the use of the corporation $3 a day for each day the plant was operated. Inasmuch as he has not complied with his part of the obligation, plaintiff should not be heard to complain of the action

taken by the other stockholders in authorizing the payment of that part of their wages which had thus been withheld.

■ From a small investment by the stockholders the corporation has, through the efforts of the defendants, enlarged its plant and increased its operations, and the evidence tends to show that the defendants have with the utmost good faith devoted their time to building up its business and have done nothing which entitles the plaintiff to any of the relief which he demands.

■ After the court had announced its decision and a proposed decree had been presented, the plaintiff filed exceptions objecting to the dismissal of the suit with prejudice and moved the court to dismiss it without prejudice. The court's decree was based on all the testimony in the case, including that of the plaintiff and the defendants, and no error was committed by the trial court in dismissing the suit with prejudice, inasmuch as the court had determined, after full hearing, that the plaintiff was not entitled to the relief he demanded and under the circumstances a decree dismissing the suit would bar another suit for the same cause: § 6-208, Oregon Code 1930. The addition of the words "with prejudice" was mere surplusage.

■ It is contended by the appellant that the records of the corporation introduced in evidence are not sufficiently complete to afford, by examination thereof, an understanding of the business condition of the corporation, and that therefore an accounting should be had. The evidence is undisputed that the defendants have offered to allow the plaintiff at any time to inspect the records and that plaintiff has been furnished an account showing the business condition of the corporation. There is no evidence that an examination of the

records by an accountant would not furnish all information necessary for a full understanding of all transactions had by the defendant corporation.

■ After the appeal had been perfected and the transcript of testimony had been filed in this court, the appellant contended that the transcript and record filed herein were erroneous and should be corrected. Thereupon the respondents stipulated with the appellant that the court might enter an order to have returned to the circuit court the transcript and record "with directions to correct any defects and/or supply omissions in the transcript and/or record upon appeal". Upon the return of the transcript and record the appellant objected to their being passed upon by the judge who had heard the case. The matter was then assigned to another member of the Multnomah county circuit court, who, after several hearings in connection therewith, found the appellant's contention without merit and ordered the record to be returned to this court. The question of defects in the record was subsequently taken up by the appellant before several other circuit judges, including an outside circuit judge temporarily assigned to Multnomah county. Just all that happened thereafter, it is difficult to ascertain from the record. The fact remains that the transcript and record are now before us and there is no definite showing as to particulars in which the record is incorrect, incomplete or misleading. We see no reason for returning them to the circuit court for further unnecessary delay.

As we find no error, the decree appealed from is affirmed.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.