Argued May 2, affirmed June 21, 1967

McMUNN, *Appellant, v.* ML & H LUMBER,
INC., ET AL, *Respondents.*
429 P. 2d 798

*Robert W. Collins,* Pendleton, and *Wm. M. Tugman,*
Walla Walla, Washington, argued the cause for appellant. With them on the briefs were Fabre & Collins

and Leeroy O. Ehlers, Pendleton, and Sherwood, Tugman & Green, Walla Walla, Washington.

*John U. Grove,* Milton-Freewater, and *George H. Corey,* Pendleton, argued the cause for respondents. With them on the brief were Monahan & Grove, Milton-Freewater, and Corey, Byler & Rew, Pendleton.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING and FORT, Justices.

FORT, J. (Pro Tempore).

This controversy arises out of a business association of the plaintiff, Clinton R. McMunn, Jr., and Robert W. Harris. These two men, together with Wayne Lyons, in late 1958, formed the ML & H Lumber, Inc., an Oregon corporation, to operate a small sawmill. At the time of the formation, it was contemplated that Mr. Lyons would haul logs to the mill; that Mr. McMunn would furnish logs to it and that Mr. Harris would plane the lumber produced in the ML & H Lumber, Inc., mill. Mr. McMunn and Mr. Lyons at the time owned and operated a timber and logging corporation known as M.L.M., Inc. Mr. Harris had his own planing mill known as Harris Lumber Company. Each of the three men owned one-third of the stock in ML & H Lumber, Inc. Mr. Lyons died in June, 1959, not long after the formation of the corporation. His stock was taken over equally by Mr. McMunn and Mr. Harris, so that they each owned 50 percent of the stock of ML & H Lumber, Inc. Mr. Harris assumed the managerial responsibilities for ML & H Lumber, Inc. A third man, A. S. Mac Gillivray, an employee of the Harris Lumber Company, was

elected as a director in place of Mr. Lyons and served as secretary of the corporation.

The mill operated during most of 1959, 1960 and 1961. Its physical assets were sold to Walla Walla Mills, Inc., on November 9, 1961, with certain exceptions not here relevant. Plaintiff contends he was to deliver logs at cost and Harris was to plane the lumber at cost. Neither of the owners drew a salary.

Difficulties arose between the owners which ultimately led to the filing of three law suits by Mr. McMunn. One law suit sought the appointment of a receiver for the corporation, an accounting of its business and an injunction *pendente lite* to restrain the collection and disbursement of funds due the corporation.

The second suit was in the nature of a stockholder's action brought to compel Robert W. Harris and Harris Lumber Company to pay certain sums claimed to be due, arising out of a forklift transaction, certain planing charges made by Harris Lumber Company alleged to be in excess of those agreed upon, and for excess labor charges due for stickering the lumber. All of these transactions occurred while Harris was also president of ML & H Lumber, Inc. An accounting was also asked for profits allegedly derived by Harris from each transaction.

The third action related to charges made by Robert W. Harris to and collected from ML & H Lumber, Inc., for the sale to the corporation by Harris of certain mill equipment. The defendants in each proceeding denied the claims of the plaintiff.

The three proceedings were consolidated for purposes of trial. The first two cases were decided adversely to the plaintiff by the trial court. The third proceeding was decided by it in plaintiff's favor and

against the defendant, Robert W. Harris. No appeal has been taken from that judgment. The plaintiff has appealed from the decree of the trial court in each of the first two proceedings.

The record is indeed a voluminous one. The parties have agreed that we may consider, as did the trial court, all of the testimony introduced in the consolidated trial, including those portions of it which were admitted primarily in connection with the suit which has not been appealed. Although consolidated for trial, however, we consider the two appeals separately.

■ In the suit seeking the appointment of a receiver and liquidation of the assets of the corporation, the plaintiff relies on ORS 57.595 and 57.560. As has previously been pointed out, the assets of the corporation were sold in November, 1961, under a written contract which is still in full force and effect, to Walla Walla Mills, Inc. Plaintiff concedes that the authority with respect to the appointment of a receiver as well as the authority to grant the request for liquidation of the corporation, is discretionary.

■■ In *Jackson v. Nicolai-Neppach Co.*, 219 Or 560, 348 P2d 9 (1959) this court had occasion to consider at length provisions of ORS 57.595 in a case also involving two shareholders, each of whom owned 50 percent of the stock. We there pointed out the discretionary nature of the circuit court's authority thereunder and stated at page 586:

> "* * * We think that the plaintiff has not only the burden of proof to establish jurisdictional facts under the shareholder deadlock provision, but the further burden of proving equitable grounds for dissolution * * *."

We also pointed out at page 587:

> "* * * Traditionally a court of equity will not

interfere with the exercise of business discretion by the directors and officers of a company \* \* \*."

These general rules have equal application here.

■ Plaintiff also seeks the appointment of a receiver in this case. In *Rugger v. Mt. Hood Electric Co.*, 143 Or 193, 20 P2d 412, 21 P2d 1100 (1933), cited with approval in *Jackson v. Nicolai-Neppach Co.*, supra, we said at page 574:

"'The appointment of a receiver to liquidate and wind up the affairs of a corporation is a harsh remedy and ought not to be invoked except in extreme cases and then only as a last resort.'"

■ The corporation ceased its operations on November 9, 1961, when it sold its operating physical assets to Walla Walla Mills, Inc. The rights of Mr. McMunn and Mr. Harris and ML & H Lumber, Inc., with respect to the disposition of its assets are covered by the contract between that corporation and Walla Walla Mills, Inc. It is apparent that this agreement was executed with the full knowledge and consent of the plaintiff, since on the same date he and his wife executed to Walla Walla Mills, Inc., an agreement to sell a very substantial quantity of timber owned by them and M.L.M., Inc., and jointly with ML & H Lumber, Inc., on the same date executed an escrow instruction to the Baker-Boyer National Bank at Walla Walla depositing the various documents in escrow covering the sale of the lumber company assets and the timber rights of Mr. and Mrs. McMunn and those of his own logging corporation, M.L.M., Inc. This agreement also expressly provided for the disposition of all funds derived both from the sale of ML & H Lumber, Inc., and of the timber owned by the McMunns personally and through their own corporation, M.L.M., Inc. Fifty per-

cent of the funds derived from the total transaction after payment of commission to the real estate broker were to be distributed to ML & H Lumber, Inc., and 50 percent to Clinton R. McMunn, Jr. In the light of this contract, the trial court concluded that there was no such showing of hardship to a stockholder nor of necessity for preservation of assets as the law requires prior either to the appointment of a receiver or in directing the dissolution of a corporation. We agree.

Resolution of the three separate claims of plaintiff as set forth in the second suit must be found largely in the oral testimony of the parties, since there are no corporate minutes respecting them and no written agreements between the principals or either principal and the corporation are in evidence. Mr. McMunn's own licensed accountant, Frank Gustafson, in the summary of his audit of ML & H Lumber, Inc., done for McMunn after the sale of the corporate assets to Walla Walla Mills, Inc., accurately pointed out "* * * that the lack of written agreements and being specific about details make for a broad area in which any disagreements can arise * * *."

Most of the 1400 pages of transcript and the hundreds of pages of depositions and exhibits were made necessary in an effort to supply a factual basis for the respective positions of the parties.

■ The plaintiff claims an inadequate adjustment was made when Harris Lumber Company kept a new forklift truck and substituted an older one in the sale by ML & H Lumber, Inc., of its assets to Walla Walla Mills, Inc. The weight of the evidence is clearly to the contrary. We think the trial court's finding was correct.

The plaintiff next claims Harris Lumber Company

overcharged ML & H Lumber, Inc., for the planing of its lumber. Here, too, as stated above, there are no writings to help us.

In *Roles v. Roles Shingle Company,* 147 Or 365, 31 P2d 180 (1934), we pointed out at 371:

"Although it would have been more orderly and businesslike, if the directors of the corporation had evidenced the understandings between the different stockholders by formal resolutions, rather than to proceed in the informal manner which they chose, nevertheless in such an instance as this, wherein all the stock of the corporation is owned by a few, and all or most of the stockholders are actively engaged in the enterprise of the corporation, it is often the practice to transact ordinary business without formal resolutions: *First National Bank v. Frazier,* 143 Or. 662 (19 P. (2d) 1091, 22 P. (2d) 325)."

■■ Here the plaintiff was selling and delivering logs constantly to the corporation. He owned 50 percent of its stock, was vice-president and a director of it, and was widely experienced in the logging and lumbering business. We think he cannot complain simply because of the informality of the corporate procedures in dealing with its shareholders. *Roles v. Roles Shingle Company,* supra. His own accountant testified that the plaintiff himself had told him the charge agreed to for planing the pine lumber was greater than $10.00, the amount here plaintiff contends is correct. Further, plaintiff admits that the amount paid him for logs by the corporation was also set orally, and that it was later raised above the original figure at his request as his costs increased. We think there is substantial evidence to support the finding of the trial court that plaintiff failed to prove his claim for alleged excess planing charges paid to Harris Lumber Company.

He heard and observed the witnesses. We agree with his finding.

■ The final item claimed by plaintiff relates to charges made by Harris Lumber Company for stickering the lumber. Plaintiff contends it was agreed Harris would do this as a part of the planing charge. Again, only oral evidence is available. There was substantial evidence by independent witnesses that stickering was customarily a sawmill expense, not a planing mill cost, and that, therefore, ML & H Lumber, Inc., properly paid for this work. We think the trial court correctly concluded there was no agreement by Harris Lumber Company to pay ML & H Lumber, Inc., for the cost of stickering, or to assume it as a part of the planing charge.

The fourth and final cause of action in the second suit was for an accounting. In view of our holding with respect to the first three causes of action, and our decision on the first suit, it follows that this claim likewise is without merit. The trial court properly dismissed it.

We have carefully reviewed this lengthy and complicated record and are of the opinion that the trial court has correctly disposed of each matter, including its denial of attorney fees to plaintiff.

The decree of the trial court is affirmed in both suits.