Argued May 2, at Pendleton, affirmed September 13, 1977

POLLARD, *Appellant,*
*v.*
POLLARD'S L. L. & L., INC. et al,
*Respondents.*
(SC P-2493, TC E.18,310)

POLLARD, *Appellant,*
*v.*
POLLARD MOTORS, INC. et al,
*Respondents.*
(SC P-2494, TC E.18,959)

POLLARD, *Appellant,*
*v.*
POLLARD LEASING, INC. et al,
*Respondents.*
(SC P-2495, TC E.18,960)

568 P2d 1387

Phelps R. Gose, Walla Walla, Washington, argued the cause for appellant. With him on the briefs was Robert W. Collins, Pendleton.

Dennis A. Hachler, Pendleton, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Howell, Bryson, Lent, Linde, and Campbell, Justices.

LENT, J.

**LENT, J.**

Plaintiff brought three shareholder derivative suits in equity, respectively, on behalf of Pollard Motors, Pollard Leasing, and Pollard's L. L. & L., Inc. (LLL). In each suit, after alleging his shareholder status in each of the corporations, plaintiff requested an accounting. Additionally, in the LLL suit, plaintiff sought to compel defendant Roberts[1] to "convey" certain ranches and cattle to LLL upon the theory that defendant's interest in that real and personal property was acquired as "trustee"[2] for the benefit of LLL. The cases were consolidated for trial, after which the court found generally for the defendants and dismissed plaintiff's complaints. Plaintiff appeals, contending that the lower court erred in failing to grant the requested relief. We affirm upon de novo review. ORS 19.125(3).

On oral argument before this court, plaintiff conceded that any inquiry into the financial condition of Pollard Motors and Pollard Leasing would be fruitless and, therefore, the causes involving those defendants were not viable. The sole issue upon review is whether upon the whole record plaintiff is entitled to any of the relief sought upon behalf of LLL.

In early 1970 Pollard Motors and Pollard Leasing were largely owned by plaintiff's uncle, Oscar Pollard. At that time plaintiff negotiated the sale of his uncle's interest in these corporations to the defendant. Pollard Motors was engaged in the sale of automobiles and trucks. Pollard Leasing was an automobile, truck and equipment lessor. Plaintiff had previously subscribed for 25% of the shares of each of these corporations, to be paid by wage withholding. However, the full amount of the subscription was not paid, so that by

---

[1] Although the corporations are nominal defendants in these suits, we shall use the word "defendant" to refer to Roberts alone.

[2] There is no evidence sufficient to establish an enforceable express trust, and we, therefore, assume plaintiff relies upon some theory of trust implied in law. Whether he is urging a resulting or a constructive trust is unimportant in light of our evaluation of the evidence.

[ 469 ]

1970 plaintiff owned only 5.1% of the shares of Pollard Motors and none of the shares of Pollard Leasing.

After the sale of Oscar Pollard's interest in the corporations to defendant, plaintiff continued as general manager of both companies. He was removed from corporate office by the Board of Directors of Pollard Motors on November 29, 1970, because of the failing condition of the businesses. At the same time plaintiff was removed from managerial capacities in Pollard Leasing and LLL. All three corporations were later dissolved, leaving considerable debts.

The present controversy concerns the respective rights of the parties to certain property which plaintiff contends should be capital assets of LLL. This corporation was formed by plaintiff and defendant after defendant's purchase of Oscar Pollard's interests in the other corporations. A certificate of incorporation for LLL was issued on March 17, 1970. The Articles of Incorporation, filed the same day but signed on February 27, 1970, list the corporate purposes as including freight operations, the purchase of real property, dealing in agricultural products and livestock, management and operation of farm properties, and the logging and processing of timber. Stock certificates were written but not issued to either party.

Consistent with these aims, both plaintiff and defendant, prior to incorporation, agreed to contribute $100,000 in assets to the corporation. Plaintiff was to donate logging equipment and contracts; defendant was to contribute the down payment on certain ranch property. Negotiations were being conducted during this period for the acquisition of the ranch real property and cattle for the corporation. Early drafts of the sales contracts listed the corporation as the purchaser; however, defendant was named purchaser in the final contracts, which were signed on May 4, 1970. The down payment for this purchase was borrowed from Pacific National Security Company after a credit investigation of defendant. A $98,000 check to defend-

ant and his wife was issued by Pacific National on May 25, 1970. This was deposited in the LLL account. Five days previously, LLL had drawn a $97,937.76 check to the escrow account for the ranch property. After the acquisition of these properties by defendant, LLL operated the ranches for a period.

Plaintiff contends that he contributed more than $100,000 equity in logging equipment to the corporation. He asserts that the ranch property and cattle were taken in defendant's name as "trustee" for the corporation. Because the corporation is now dissolved and because he contends that he was a 50% shareholder in the corporation, plaintiff now seeks a decree ordering defendant to convey all interest in the ranch and cattle to LLL, so that plaintiff would receive one-half thereof as his share on final liquidation of the corporation. Defendant objects, contending that plaintiff was not a shareholder and that plaintiff failed to contribute anything to the corporation, thus relieving defendant of any obligation. According to defendant, this is the reason why the ranch assets were conveyed to him in his own name.

■ ■ It is difficult to reconstruct these events. Corporate records were not kept. The agreement between the parties was not written. No record was offered of formal corporate ratification of this understanding. Because of this, the credibility of each party's version of the truth plays a key role in the resolution of the controversy. As has been noted,

> "If the affairs of a corporation are conducted informally and paper work is neglected, the stage is set for serious trouble whenever any difference arises among the shareholders. There may be no way of establishing, unequivocally, exactly what action has been taken in the past on the matter in question, when action was taken, and by whom; * * *. Naturally suspicions are aroused, and each side 'plugs' for its particular view of the facts. Furthermore, the fact that records do not exist enables the unscrupulous to manufacture evidence and push with some chance of success claims which they know are

[ 471 ]

unjustified." O'Neal, Expulsion or Oppression of Business Associates 21-22, § 2.08 (1961).

In the absence here of any stock subscription agreement adopted by the corporation or corporate ratification of the agreement, we conclude that the agreement was one between promoters for the formation of the corporation and that the corporation did not acquire rights or liabilities as a result. *See* Henn, The Law of Corporations 179, § 107 (2d ed 1970). This being so, the essence of plaintiff's grievance is with defendant's breach of the promoter's contract by failure to contribute to the corporation.[3] In order to be entitled to the relief sought under contract principles, plaintiff must show that he fulfilled his part of the bargain and that defendant did not. We agree with the trial court that plaintiff failed to show his claimed contribution.[4]

At trial plaintiff testified that he contributed logging equipment worth $200,000, with encumbrances of $80,000, to the corporation. He claimed that he acquired the equipment by donation from a business associate, Mr. Sheff. Mr. Sheff signed blank power of attorney forms to complete the transfer in late 1970. These forms were still incomplete by the time of the trial. Moreover, there were no documents to evidence a transfer of the assets to LLL. Much of the equipment was later repossessed and sold by creditors.

Even assuming a transfer of these assets by plain-

---

[3]Thus plaintiff's derivative suit on behalf of the corporation to enforce the agreement will not lie. However, because no other shareholders are involved and the corporation is dissolved and because the relief sought is equitable, disposition of the entire controversy at this time seems appropriate.

[4]The record in this suit does not show when or if defendant notified plaintiff that the property was not being purchased for the corporation. As a co-promoter, defendant was a fiduciary to the plaintiff. In a similar case involving the fiduciary obligation of partners where one partner purchased as his own property contemplated to be partnership assets, we held: "Defendant had no right to purchase for himself without obtaining plaintiff's consent or giving him unequivocal notice that unless plaintiff's share of the money were furnished, defendant would consider himself free to proceed on his own account." *Terry v. Simmons,* 261 Or 626, 633, 496 P2d 11 (1972). In the absence of evidence of *lack* of notice, we need not reach the issue in the present case.

tiff to the corporation, there was insufficient evidence of its value. Plaintiff introduced two "Financial Statements" of LLL, dated February 28, 1970, and April 30, 1970, which were signed by both plaintiff and defendant. Both the ranches and some logging equipment are shown as corporate assets. In the later statement, the value of the logging equipment is shown to be approximately $155,000. Yet much of this equipment appears to have been purchased by LLL from Pollard Motors by financing the deal through General Motors Acceptance Corporation. A letter from GMAC to Pollard Motors, dated April 3, 1970, shows $117,000 as loaned to LLL as "purchaser" from Pollard Motors of much of the listed logging equipment. The April financial statement lists obligations of $140,166 as owed to GMAC and two other equipment financiers.

We conclude that in the absence of evidence documenting the equipment transfer to plaintiff and the subsequent transfer to the corporation, and with insufficient evidence of the equipment involved or its worth (as encumbered), plaintiff has failed to show compliance with the contract made with defendant and cannot prevail under that agreement. This issue, especially in view of the lack of documentary evidence, is largely one of the credibility of plaintiff's explanation of what facts are known. The trial court, by its decision adverse to plaintiff's contention, found favor with defendant's version. We rely on this judgment as to the credibility of the parties and the reliability of their testimony. *Gentry v. Lane,* 245 Or 122, 420 P2d 637 (1966); *Turner v. McDaniel,* 194 Or 595, 243 P2d 273 (1952).[5]

---

[5] Additional discrepancies appear in plaintiff's testimony that he was to assume Sheff's debts as part of the equipment transfer deal. Evidence existed, however, that Sheff owed Pollard Motors $60,000 at the time of the equipment transfer. When Pollard Motors later sued Sheff for this obligation, Sheff did not consult plaintiff about the debt and plaintiff was not made a party. Additional evidence existed that LLL paid $25,000 to Pollard Motors on a Sheff debt. These monies were paid in May of 1970 from a loan to the corporation secured by the personal guaranty of defendant and his wife.

■ The remaining issue involves plaintiff's request for an accounting. Assuming plaintiff was a shareholder in the corporation, we conclude that a more detailed accounting than the one given at trial is not necessary. During most of the active life of LLL, plaintiff was its manager and presumably familiar with its operations. Some of the corporate records are no longer available, in part due to the long period of time (three years) from plaintiff's removal as president of the corporation to the time this suit was filed. This delay does not aid plaintiff's cause. *Cf. Newburgh v. Sterling Leather Co.,* 348 Mass 800, 206 NE2d 59, 60 (1965). The available records have been given to plaintiff. Two witnesses familiar with the corporate books testified that at the time the corporation was dissolved it was heavily in debt due to losses sustained while plaintiff managed the corporation. We find that it would serve no purpose to require defendant to pay for a detailed audit. Plaintiff may, if he wishes, finance an examination of the remaining corporate records.

In *Roles v. Roles Shingle Company,* 147 Or 365, 31 P2d 180 (1934), plaintiff, a shareholder, brought suit for an accounting, a receivership, and recovery of corporate money allegedly diverted by defendant shareholders. The plaintiff contended that defendant breached a shareholder agreement by authorizing payment to themselves of wages previously withheld as capital contributions pursuant to the agreement. To this contention the court replied,

> "* * * Inasmuch as he has not complied with his part of the obligation, plaintiff should not be heard to complain of the action taken by the other stockholders in authorizing the payment of that part of their wages which had thus been withheld." (147 Or at 371-72).

A further accounting was not ordered because "plaintiff has been furnished an account showing the business condition of the corporation" and there was no evidence that further examination of the records by an

accountant would be helpful. A similar analysis dictates the result in the instant controversy.

Affirmed.